Mary Elizabeth WELCH,
Appellant (Plaintiff),

v.

RAILROAD CROSSING, INC.,
Appellee (Defendant).

No. 2–484–A–119.

Court of Appeals of Indiana,
Second District.

Feb. 4, 1986.

Thomas N. Eckerle, Deborah J. Caruso, Dale, Eckerle and Eke, John M. Choplin, II, Peter A. Schroeder, Norris, Choplin and Johnson, Indianapolis, for appellant (plaintiff).

R. William Irwin, Stephen J. Peters, Stewart, Irwin, Gilliom, Fuller and Meyer, Indianapolis, for appellee (defendant).

BUCHANAN, Chief Judge.

## CASE SUMMARY

Plaintiff-appellant, Mary Elizabeth Welch (Welch), appeals from a final judgment entered on a directed verdict in favor of the defendant-appellee, Railroad Crossing, Inc. (Railroad Crossing), in her action for personal injuries, in which she alleged that Railroad Crossing, as the operator of a tavern, failed to protect her from a criminal assault. Welch contends that the trial court's decision to grant the Railroad Crossing's motion for judgment on the evidence [1] at the close of her case-in-chief was contrary to law and that the trial court erred by excluding certain evidence offered by her.

We affirm.

## FACTS

As this case was taken from the jury on the Railroad Crossing's motion for judg-

---

**1.** Ind.Rules of Procedure, Trial Rule 50(A).

ment on the evidence, we relate only the evidence most favorable to Welch, the non-movant.

Railroad Crossing is a food-serving tavern in Tipton, Indiana. On Friday evening, September 18, 1981, a band was scheduled to perform, and a large crowd was expected. Welch and a friend, Randy McDaniel (McDaniel), arrived at the tavern at approximately 9:30 p.m. Welch was only eighteen years old, but was allowed to enter the bar because she presented a fraudulent Indiana identification card. The I.D. card bore her picture, but listed her name as Mary E. Walsh and indicated her age as twenty-one years old.[2]

At trial, Welch admitted that she had falsified her name and date of birth when she obtained the fraudulent card. During the course of the evening, Welch danced or sat in a booth drinking alcoholic beverages and socializing with McDaniel, Rick Lovell (Lovell), and others. At approximately 1:15 a.m., Welch was advised that the zipper on her blue jeans was broken. She told friends that she was going to her car to obtain a change of jeans. She also advised the doorman, Dan Tragessor (Tragessor), of her intention as she left the bar. Although they did not appear to be leaving together, Lovell also left the bar only a few steps behind Welch. Welch obtained the jeans from her car and was returning to the bar via the public sidewalk in front of the Railroad Crossing when she was confronted by Lovell at the northern corner of the building. Welch testified that Lovell prevented her from returning to the bar and began calling her obscene names. Welch was frightened by Lovell's threatening manner and attempted to retreat across a grassy area owned by the Railroad Crossing. Lovell, however, pursued her and viciously attacked her with a knife. Welch tried to run away, but collapsed as a result of the severity of her injuries which were extensive, disfiguring, and nearly fatal. The last thing Welch remembered before she lost consciousness was seeing Lovell walk around the corner of the building.

Approximately twenty-five minutes after he had seen Lovell follow Welch out, McDaniel saw Lovell return to the bar. Concerned that Welch had not returned, McDaniel decided to look for her. He found her unconscious behind the Railroad Crossing building. The area in which Welch was found was not actually owned by Railroad Crossing. It was, however, located immediately behind the building and adjacent to the Railroad Crossing's property. In addition, there was evidence that the Railroad Crossing had exercised some form of control over some portion of the area in which Welch was found. Thus, it appears that the confrontation began on the public sidewalk, that it escalated as the two crossed the grassy area owned by the bar, and that it culminated with Welch's collapse immediately behind the building.

Lovell had arrived at the Railroad Crossing at approximately 7:30 p.m. on the evening of the attack. At about 8:30 p.m., Lovell left the bar to go to a nearby liquor store and returned with a bottle of champagne. Lovell asked the manager, David Bruce Jones (Jones), to chill the champagne for him, explaining that it was for a friend's birthday celebration later in the evening. Jones agreed to do so. Later, Lovell retrieved the champagne and drank it on the premises. In allowing Lovell to carry in and consume the champagne on its premises, the tavern presumably committed a violation of Ind.Code 7.1-5-8-4 (1982).[3] Over the course of the evening, in addition to the champagne, Lovell drank at least six mixed drinks and an unknown

---

2. A subsequent investigation of Welch's purse revealed that she also carried a second Indiana identification card which stated her real name and her correct date of birth.

3. IC 7.1-5-8-4 provides in pertinent part:
"It is unlawful for a person who owns or operates a private or public restaurant or place of public or private entertainment to permit another person to come into his establishment with an alcoholic beverage for sale or gift, or for consumption in the establishment by that person or another, or to serve a setup to a person who comes into his establishment."

quantity of beer. According to some of Welch's witnesses, Lovell was visibly quite intoxicated. While there was a considerable amount of credible evidence which tends to contradict the conclusion that Lovell was visibly intoxicated, in considering only the evidence favorable to Welch, we must assume that Lovell was visibly intoxicated and that he was served additional drinks while in this condition.[4]

While Lovell was characterized as looking somewhat out of place in the bar due to the tattoos on his arms, the leather cap he wore, and the pocketknife he wore in a carrier on his belt, he was no stranger to the bar. There was evidence that Lovell had been in the bar at least ten times prior to the evening of the attack. There was, however, no evidence that Lovell had ever caused any type of disturbance in or around the bar prior to his attack, or that the employees of the bar had any knowledge or reason to believe that Lovell might become violent when under the influence of alcohol. Tragessor testified that he saw the carrier on Lovell's belt and assumed that it contained a knife, but "didn't really pay a lot of attention to it." *Record* at 1030. Jones was not aware that Lovell was wearing a pocketknife but testified: "that's nothing special." *Record* at 1012. He went on to testify that a lot of people wear pocketknives like Lovell's on their belts because they use them in their work and that customers had come in wearing such knives on several occasions. *Record* at 1012, 1021. Moreover, Lovell did not remove his pocketknife from its carrier while in the bar, and he made no threats to anyone; nor was he bellicose or even boisterous or unruly. Rather, Lovell sat in the same booth with Welch much of the evening and danced with her at least twice.

Prior to Lovell's assault, the Railroad Crossing's history as a site of violent activity was composed of the following three altercations. Peter Cleveland (Cleveland) testified that he was a patron in the Railroad Crossing when two or three patrons spontaneously jumped up and broke bottles on the table where they were sitting. He further testified: "That's about the extent of the fight, I believe, it was stopped at that point." *Record* at 1106. This incident occurred at least one year prior to Lovell's attack. Elizabeth Elaine Lovell (Elizabeth), the assailant's wife, testified that she had been to the Railroad Crossing probably ten times and had witnessed two fights outside the tavern. The first began inside as an argument between a man and a woman. The arguing couple left the bar, proceeded across the street, and began fighting. The second involved two men fighting in front of the tavern. Both of these fights occurred approximately three years prior to Lovell's assault on Welch. The record contains no additional details of any of these three altercations, nor does it contain evidence of any other violent activity at the tavern.

Welch commenced this action against Railroad Crossing to recover damages for her injuries.[5] Her action was premised on two theories. First, she alleged that the Railroad Crossing had negligently performed its common law duty to protect her from Lovell's criminal attack and, second, that the bar's statutory violations constituted negligence per se. These acts of negligence, she complained, were the proximate cause of her injuries. At the close of her case-in-chief, the Railroad Crossing moved for judgment on the evidence. The court granted this motion, directed the jury to render a verdict in favor of the Railroad Crossing, and entered a final judgment thereon.

---

**4.** IC 7.1–5–10–15 states: "It is unlawful for a person to sell, barter, deliver, or give away an alcoholic beverage to another person who is in a state of intoxication if the person knows that the other person is intoxicated."

**5.** Lovell was convicted of battery and attempted murder for his attack on Welch. He was sentenced to thirty years in prison and his conviction was affirmed by the Indiana Supreme Court. *See Lovell v. State* (1985), Ind., 474 N.E.2d 505. Lovell did not appear as a witness in the trial of Welch's action against the Railroad Crossing.

On appeal, Welch attacks the trial court's decision to grant the motion for judgment on the evidence and also argues the court erred in excluding certain evidence tendered by her.

## ISSUES

The critical underlying questions dispositive of the various issues as presented in Welch's brief can be more succinctly restated as follows:

1. Did the Railroad Crossing owe Welch a common law duty to protect her from Lovell's criminal assault?
2. Whether the Railroad Crossing's statutory violations were the proximate cause of Lovell's attack and Welch's injuries?
3. Did the trial court abuse its discretion by excluding certain evidence tendered by Welch?

## DECISION

ISSUE ONE—Did the Railroad Crossing owe Welch a common law duty to protect her from Lovell's criminal assault?

PARTIES' CONTENTIONS—Welch contends that traditional premises liability concepts do not apply to her case because criminal attacks by an intoxicated patron, even attacks against a non-patron off the tavern's premises, are a natural and foreseeable danger created by a tavern's sale of alcoholic beverages. Consequently, she argues, the law imposes a duty on tavern owners to protect even members of the public at large from assaults by their patrons.

The Railroad Crossing responds that it owed Welch no common law duty because she was a trespasser. It further contends that even if traditional premises liability concepts are not applied, it still owed her no duty because Lovell's attack was an entirely unforeseeable event.

CONCLUSION—The Railroad Crossing owed Welch no common law duty to protect her from Lovell's criminal assault.

■ The standard which governs our review of an appeal from a judgment on the evidence is that a trial court may properly grant a defendant's motion for judgment on the evidence only when there is no evidence on one or more critical issues or the evidence with respect thereto is without conflict and leads only to inferences in favor of the defendant. *See Jones v. Gleim* (1984), Ind., 468 N.E.2d 205. Thus, when there is a complete failure of proof on an essential element of the plaintiff's case, the trial court is correct in taking the case from the jury. *See Craven v. Niagra Mach. & Tool Works, Inc.* (1981), Ind.App., 417 N.E.2d 1165, *reh'g granted* on other grounds, (1981) 425 N.E.2d 654, *trans. denied.* In addition, if an essential element of the plaintiff's case must be inferred from and based on circumstantial evidence, the question is one of the reasonableness of the necessary inference. *See Senco Prods. Inc. v. Riley* (1982), Ind.App., 434 N.E.2d 561. If the jury could have reached a verdict in favor of the plaintiff only by drawing unreasonable inferences, we must uphold the judgment on the evidence for the defendant as proper. *Cf. id.* at 567 (when a verdict for the plaintiff "could only have been based on surmise, conjecture or speculation as to one or more of the necessary elements of a claim [,it] should not be permitted to stand."). Consequently, the trial court may consider only the evidence and reasonable inferences therefrom most favorable to the nonmoving party, here, Welch. *See Jones, supra.* In reviewing the trial court's ruling on a motion for judgment on the evidence, we are bound by the same standards which govern the trial court's decision in the first instance. *Senco, supra.*

■ It is axiomatic that a defendant must have a duty to protect the injured party from harm before the defendant can be held liable. *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701. Whether such a duty is owed is a question of law for the court. *Id.* In this case, it has been vigorously argued that the existence of a common law duty to protect Welch should be determined by resolving two questions: whether the attack took place on or off

land owned or controlled by the Railroad Crossing, and whether Welch was a business invitee, licensee, or trespasser at the time of the attack. It is our view, however, that resolution of these complex factual questions is unnecessary to our determination of whether the Railroad Crossing owed Welch a common law duty to protect her from Lovell's attack. This is so because Lovell's attack was a spontaneous, entirely unforeseeable event. Consequently, the bar cannot be held to have had a duty to protect Welch even if the questions of her status and where the attack occurred were resolved in her favor. Therefore, these issues are unnecessary to our decision and need not be addressed because we are duty bound to affirm the trial court's judgment if it is sustainable on any valid legal theory. *Shuee v. Gedert* (1979), 182 Ind.App. 432, 395 N.E.2d 804.

In Indiana, the proprietor of a tavern owes a duty to exercise reasonable care to protect his patrons (business invitees) from the *foreseeable* disorderly acts of his other patrons, but this duty is not absolute. *Glen Park Democratic Club, Inc. v. Kylsa* (1966), 139 Ind.App. 393, 213 N.E.2d 812, *trans. denied.* Moreover, other jurisdictions have recognized a duty on the part of the proprietor of a business in which alcoholic beverages are sold that extends beyond the physical boundaries of the premises to protect even non-patrons from the foreseeable negligent or intentional acts of its patrons. *See McFarlin v. Hall* (1980), 127 Ariz. 220, 619 P.2d 729; *Connolly v. Nicollet Hotel* (1959), 254 Minn. 373, 95 N.W.2d 657, *quoted in Glen Park, supra,* 139 Ind.App. at 395–96, 213 N.E.2d at 814. In these latter cases, the injured party is not on the defendant's land and has no status under a traditional premises liability theory. Nevertheless, a relationship giving rise to the duty to protect is found in the foreseeability of the harm to the injured party. And yet, a proprietor of a tavern is not the insurer of the safety even of his patrons. 65 C.J.S. *Negligence* § 63(126) (1966). Nor is he bound to anticipate the unexpected, independent acts of third persons. *Id.* at § 63(127). Conse-

quently, there is generally no duty on the part of a tavern owner to protect even his own patrons from the criminal acts of third persons. *Nakis v. Amabile* (1981), 103 Ill. App.3d 840, 59 Ill.Dec. 498, 431 N.E.2d 1255. A duty to anticipate and to take steps to protect against a criminal act arises only when the *facts of a particular case* make it reasonably foreseeable that a criminal act is likely to occur. *Id.; accord McFarlin, supra; Taggart v. Bitzenhofer* (1972) 35 Ohio App.2d 23, 299 N.E.2d 901; *Padulo v. Schneider* (1952), 346 Ill.App. 454, 105 N.E.2d 115; 65 C.J.S. *Negligence* § 63(127).

Thus, the question is whether a duty to protect Welch arose under the facts of this case. There have been hundreds of cases considering the question of a tavern's common law liability for injuries caused by an assault by one of its patrons. We have found *no case* in which a court imposed a common law duty to protect against an attack on the theory that intentional criminal acts are foreseeable merely from the fact that alcohol is sold on the premises or that such acts are foreseeable solely from the fact that the assailant was served beyond the point of intoxication. There must be more because the foreseeability of a criminal act is determined by reference to the proprietor's *knowledge* of the actor's *behavior.* For the proprietor of a tavern to be held liable for a criminal assault under a common law theory of negligence, the proprietor must have been alerted to the likelihood of harm by the prior actions of the assailant, either on the occasion of the injury or on previous occasions. *See* Annot., 70 A.L.R.2d 628, § 18 (1960); *see also* Annot., 97 A.L.R.3d 528 (1980); Annot., 65 A.L.R.2d 923, § 5 (1959).

In this case, there was no more. The events of the night of the attack provided no notice or warning that Lovell's attack was imminent or likely to occur. Lovell was not bellicose or even boisterous. There was no evidence of any ill will between him and Welch; they did not argue and, in fact, danced together on occasion

and socialized throughout the evening. Lovell's tattoos and unusual appearance hardly established that he was a dangerous person likely to attack Welch. Even the fact that Lovell carried a pocketknife on his belt did not make his attack reasonably foreseeable. Jones testified that a lot of people carry pocketknives like Lovell's for their work and that people wearing such knives had come into the Railroad Crossing on several occasions. *Record* at 1012. Thus, he saw "nothing special" in the fact that Lovell carried a pocketknife. *Record* at 1012. We also attach no special significance to this fact in the absence of some evidence of threatening behavior on Lovell's part that would reasonably suggest a likelihood that he would use the knife to cause harm. *See Getson v. Edifice Lounge, Inc.* (1983), 117 Ill.App.3d 707, 72 Ill.Dec. 826, 453 N.E.2d 131. In *Getson* the plaintiff was stabbed by a member of a motorcycle group. In response to the plaintiff's assertion that the assault should have been foreseen from the presence in the tavern of knife-carrying "Outlaws," the court concluded: "We cannot say as a matter of law that someone who is a member of a motorcycle group and who happens to carry a buck knife is *per se* dangerous." *Id.* 72 Ill.Dec. at 830, 453 N.E.2d at 135. Rather, the court went on, foreseeability must be based on evidence of the *assailant's actions* which the tavern's employees were or should have been aware of, "which would have compelled a reasonably prudent person to conclude that it was likely Talmadge [the assailant] might endanger an invitee." *Id.* As there was no evidence that the tavern's employees had ever seen any of the gang members cause trouble before and no evidence that they knew the assailant was a troublemaker, the court concluded that Talmadge's attack was unforeseeable and reversed a jury verdict in favor of the injured plaintiff. *Id.* Similarly, on the night in question, Lovell exhibited *no behavior* that suggested he was likely to use the knife as he did; he did not remove the knife from its carrier while in the bar and he made no threats to anyone. Moreover, Lovell had been in the Railroad Crossing many times, but had never exhibited any violent tendencies. He was not involved in any of the three fights in and around the Railroad Crossing during the three years preceding the attack, and these rare altercations had no tendency to make his attack foreseeable. In short, Lovell's assault was as unforeseeable, unexpected, and spontaneous as it was barbaric. Consequently, under these facts, no common law duty arose to protect Welch from an attack Railroad Crossing had no way of foreseeing.

ISSUE TWO—Whether the Railroad Crossing's statutory violations were the proximate cause of Lovell's attack and Welch's injuries?

PARTIES' CONTENTIONS—Welch contends that the Railroad Crossing's statutory violations constituted negligence per se which was the proximate cause of her injuries because Lovell's attack was a foreseeable consequence of the violations.

The Railroad Crossing responds that its statutory violations cannot be the proximate cause of Welch's injuries because Lovell's intentional act was an unforeseeable, intervening event which broke the causal chain between its negligent acts and Welch's injuries.

CONCLUSION—The Railroad Crossing's statutory violations did constitute negligence per se, but this negligence was not the proximate cause of Welch's injuries because Lovell's attack was not shown to be a reasonably foreseeable result of the violations.

We have already concluded that the trial court properly determined that Lovell's attack was not foreseeable under the facts of this case and, therefore, that no common law duty arose. In this issue, however, foreseeability goes to the determination of the proximate cause of Welch's injuries, generally an issue for the jury, "if different minds might reasonably draw different inferences from the facts given." *Elder v. Fisher* (1966), 247 Ind. 598, 606, 217 N.E.2d 847, 852. Therefore, we must determine whether any reasonable inference that the

Railroad Crossing's statutory violations were the proximate cause of Welch's injuries could be drawn from the evidence presented.

█ For the Railroad Crossing's statutory violations to have been the proximate cause of Welch's injuries, Lovell's intervening attack must have been reasonably foreseeable by the Railroad Crossing, the allegedly negligent party.

"[I]t is well established that, when between an alleged act of negligence and the occurrence of an injury, there intervenes the wilful, malicious and criminal act of a third party which causes the injury and which could not reasonably have been foreseen by the allegedly negligent party, the causal chain between the negligence and the injury is broken."

*Estate of Mathes v. Ireland* (1981), Ind. App., 419 N.E.2d 782, 785. Moreover, the Indiana cases discussing actions brought under our liquor statutes have consistently held "that a seller of alcoholic beverages may be held liable for injuries inflicted by an intoxicated person *as a result of his intoxication, where such result was reasonably foreseeable* and the sale of the intoxicant was in violation of the law." *Elsperman v. Plump* (1983), Ind.App., 446 N.E.2d 1027, 1030 (emphasis supplied); *Elder, supra.* Proof of negligence per se does not mean liability per se. *Ray v. Goldsmith* (1980), Ind.App., 400 N.E.2d 176, *trans. denied.* Therefore, in addition to proof of the statutory violations, Welch was *also* required to show that Lovell's attack was a natural and probable result of his intoxication and a consequence which should have been anticipated. *Elder, supra.*[6]

█ While Welch did present evidence that Lovell was intoxicated, that he was served additional drinks after he was visibly intoxicated, and that he was intoxicated when he committed the crime, she presented *no evidence* on the question of whether Lovell's attack was caused by or resulted from his intoxication. Instead, she attempts to compare Lovell's intentional criminal assault with an automobile collision caused by an inebriated driver and protests that the instrumentality causing the resulting injuries (automobile, gun, knife, etc.) should have no bearing on the foreseeability of the potential harm to the public created by a tavern's continued service of alcohol to an already intoxicated person. An intentional assault, however, is quite unlike an automobile accident, and it is not the nature of the instrumentality that is critical to the determination of foreseeability, but the purposeful as opposed to the unintentional manner in which the harm is caused that distinguishes the two. An automobile collision and its resulting injuries are often a natural and probable result of driving while intoxicated because intoxication is known to impair the driver's physical ability to control his car. Thus, a tavern owner who serves a patron who is beyond the point of visible intoxication, knowing the patron will be driving, should reasonably foresee an accident and may be held liable for the injuries resulting to a third party. *See Elsperman, supra.* But, even though the collision may be foreseeable and the tavern's statutory violations may be the proximate cause of the victim's injuries, the collision and the injuries are an accident, unintended by the driver. In sharp contrast, an assault is not an unintended, chance consequence of an alcohol-induced physical impairment. Indeed, an assault is an act of volition, and the injuries inflicted are the intended result of the assailant's deliberate design, even though he may be intoxicated. Welch ignores the volitional element of Lovell's attack. She

---

6. Unlike Indiana, some jurisdictions do not require the plaintiff, in an action brought under a dramshop or civil damage act, to show that intoxication was the natural cause of the injurious act, i.e., the proximate cause of the injury. This result is dictated by the particular language of the statute under which the action is brought.

*See* Annot., 70 A.L.R.2d 628 (1960); Annot., 64 A.L.R.2d 705, § 8 (1959); Annot., 65 A.L.R.2d 923, § 5 (1959). Thus, such cases are not applicable here because we do not have similar legislation and our previous cases have required proof that the injury causing act was a result of intoxication. *Elder, supra; Elsperman, supra.*

presented no *evidence* to show that intoxication was a catalyst of Lovell's assault. Our research has led us to only one case in which a theory such as Welch's has been considered by an appellate court, and that court's holding is contrary to Welch's unsupported position. In *Waller's Adm'r v. Collinsworth* (Ky.Ct.App.1911), 144 Ky. 3, 137 S.W. 766, the administrator of Waller's estate brought an action against Collinsworth to recover damages for Waller's death. The administrator, arguing a theory identical to that urged by Welch in this case, alleged that Waller's death was proximately caused by Collinsworth's illegal sale of hard cider to Blankenship, who, after becoming intoxicated on the cider, left Collinsworth's store and shot Waller, killing him. The reasoning of the court is applicable to this case:

> "In every case the inquiry is: Was the injury a natural and probable consequence of the wrongful act, and ought it to have been foreseen in the light of the attending circumstances? In this case the deceased was killed by Blankenship. Appellee's act in selling the liquor was not the efficient cause of the death. Waller would never have been killed had it not been for the intervening act of Blankenship. All that can be said is that appellee's unlawful act produced a condition of mind out of which the killing might have resulted. So many elements may enter into a homicide that it is impossible to say it is the natural result of intoxication. In order to reach such a conclusion, we would have to eliminate entirely all those elements of feeling, of temperament, of disposition, lack of self-control, and of inherent tendency to commit crime, which might of themselves have been sufficient to bring about the tragic result, even though the person committing the homicide had not been under the influence of liquor. While it may be true that many homicides result from intoxication, yet, as a vast majority of the people who drink do not commit murder, the per cent of homicides result-

ing from intoxication is so small that it cannot be said that he who sells the liquor that causes the intoxication may reasonably contemplate that murder will follow, and is therefore liable in damages for his wrongful act."

*Id.* at 6–7, 137 S.W. at 767.

We are aware of no case holding that people are likely to commit murder or criminal assaults (such as Lovell's assault) merely because they become intoxicated, i.e., that such acts are a natural, probable, and foreseeable result of intoxication alone.

Prosser always says it so well:

> "On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff, in general, has the burden of proof. *He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result.* A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."

W. PROSSER, HANDBOOK OF THE LAW OF TORTS, § 41, at 241 (4th ed. 1971) (emphasis supplied) (footnotes omitted). No such evidence was introduced.

ISSUE THREE—Did the trial court abuse its discretion by excluding certain evidence tendered by Welch?

PARTIES' CONTENTIONS—Welch argues that it was error to exclude evidence of additional outside lighting installed by the Railroad Crossing subsequent to the attack and evidence of other altercations and disturbances within the Railroad Crossing prior to the attack.

Railroad Crossing's answer is that subsequent, remedial changes are generally not admissible due to their inherently prejudicial nature and that evidence of the prior

altercations within the tavern was not relevant because Lovell was not shown to have been involved in the prior altercations and they were completely dissimilar to Lovell's attack.

CONCLUSION—The trial court did not abuse its discretion in excluding the evidence of subsequent remedial changes or the prior altercations within the Railroad Crossing.

■■■■ The admission or exclusion of evidence is within the sound discretion of the trial court. *Beta Alpha Shelter of Delta Tau Delta Fraternity, Inc. v. Strain* (1983), Ind.App., 446 N.E.2d 626, *trans. denied.* Reversal is warranted only in cases of a clear abuse of that discretion. *Indiana Nat'l Corp. v. FACO, Inc.* (1980), Ind.App., 400 N.E.2d 202. Evidence of subsequent remedial changes is generally not admissible to prove antecedent negligence. *Dudley Sports Co. v. Schmitt* (1972), 151 Ind.App. 217, 279 N.E.2d 266. However, one exception to the general rule of exclusion is that such evidence is sometimes admissible to show the defendant's ownership or control of the premises when that issue is in genuine dispute, is of substantial importance, and cannot be established by any other proof. E. CLEARY, McCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE § 275 (2d ed. 1972). Thus, such evidence is not admissible unless its need outweighs the danger inherent in its misuse. Here, the evidence of subsequent changes in lighting was merely cumulative of other evidence of the Railroad Crossing's control over the area. Therefore, the evidence was not essential to prove control, and its probative value was slight in comparison to its inherently prejudicial effect. Moreover, the exclusion of this evidence could be nothing but harmless error in light of our conclusion that the Railroad Crossing owed no common law duty to protect Welch from the attack. As this conclusion was based entirely on the lack of foreseeability of the attack, the Railroad Crossing's control over the area was not of substantial importance to our resolution of that issue. Therefore, the trial court did not abuse its discretion in excluding the evidence of subsequent remedial changes.

■■■■ Welch's entire offer to prove prior altercations or disturbances within the bar consisted of the following:

"At this time, Your Honor, we would like to make an Offer to Prove with respect to the testimony of this particular witness [Elizabeth Lovell] and I would imagine we should make the offer to prove with respect to testimony of other witnesses that we would call to the effect that there had been a number of prior altercations *within* the establishment, in terms of fights including fights with beer bottles that were broken on the table and that the purpose of that evidence would be to show that the bar owner had been put on notice as to the likelihood of criminal conduct in and around the premises that would put him under a duty to take precautions and safeguards with respect to the safety of the patrons. We have the testimony of Mrs. Lovell as well as the testimony of other individuals who would testify as to and I will name Mr. Peter Cleveland will testify to that as well."

*Record* at 1063 (emphasis supplied). This offer to prove was so general and lacking in specifics concerning the similarities between any prior altercations and Lovell's spontaneous assault *outside* the Railroad Crossing that it fails to preserve anything for appeal. *See Craven, supra,* at 1172 (evidence of similar prior accidents may be admitted to show that a party had notice of a dangerous condition, but such evidence is admissible in the trial court's discretion only when there is a showing of similarity of the essential conditions surrounding prior accidents and the particular accident in question). We also observe that the only prior altercation described in any detail in the offer to prove was a fight inside the bar during which beer bottles were broken on a table. Evidence of this fight was

subsequently admitted during the testimony of Peter Cleveland. *Record* at 1106. Thus, the offer to prove specifies no prior altercation which was, in fact, excluded from evidence and does not demonstrate an abuse of the trial court's discretion. As far as we can tell, no evidence whatsoever was excluded.

In conclusion, we recognize that Welch has suffered great physical and emotional trauma. As unfortunate and tragic as this may be, a prima facie case of negligence against Railroad Crossing was not proved.

Consequently, the trial court properly granted the Railroad Crossing's motion for judgment on the evidence.

Judgment affirmed.

SULLIVAN, J., concurs in result.

SHIELDS, J., concurs.