**PARAGON FAMILY RESTAURANT d/b/a Round the Corner Pub, Appellant–Defendant,**

v.

**Mario BARTOLINI, Jr., Appellee–Plaintiff.**

**No. 45A03–0106–CV–212.**

Court of Appeals of Indiana.

June 4, 2002.

---

Thomas A. Carton, James R. Branit, Bullaro & Carton, CHTD, Munster, IN, Attorneys for Appellant.

Barry D. Sherman, Kristen D. Hill, Barry D. Sherman & Associates, Hammond, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Louis Gerodemos and Round the Corner Pub[1] (collectively referred to as "the Pub") appeal from a final judgment entered on a jury verdict in favor of Mario Bartolini, Jr., in his action for personal injuries. We reverse and remand for a new trial.

---

1. We note that Gerodemos is one of the owners of Round the Corner Pub and Paragon Restaurant. It appears from the record that Round the Corner Pub and Paragon are two separate establishments. While Paragon is listed as a party in the Pub's motion to correct errors and the present appeal, Bartolini's complaint and the corresponding answer only denote Gerodemos and the Pub as defendants to Bartolini's personal injury action. Therefore, we assume that Paragon was erroneously listed as a party to this appeal and accordingly, have omitted this entity in the opinion as an appellant to this appeal.

*Issues*

The Pub raises the following consolidated and restated issues[2] for our review:

1. Whether Bartolini established at trial the duty of care and proximate cause elements of negligence;

2. Whether a portion of Bartolini's closing argument was improper warranting the imposition of a new trial; and

3. Whether the jury's allocation of fault was contrary to and not supported by the evidence.

*Facts and Procedural History*

The facts most favorable to the judgment reveal that the Pub is a bar[3] located in northwest Indiana. On September 19, 1997, Bartolini arrived at the Pub to socialize with some friends. Later that night, Jeffery Todd, who was underage, and his of-age friend John Mattull visited the Pub where they consumed several alcoholic beverages. Todd was never carded by any personnel of the Pub.

At closing time, Todd and Mattull exited the Pub followed by Bartolini and his companions. Todd and Mattull were intoxicated. Thereafter, Todd and Bartolini became involved in an verbal altercation[4] which culminated in Todd and Mattull attacking Bartolini. As a result of the attack, Bartolini sustained injuries and was hospitalized.[5]

Consequently, Bartolini filed suit against the Pub in the Lake Superior Court on the basis of negligence. Bartolini's complaint provides in pertinent part that:

3. [When Bartolini] left [the Pub] on the morning of September 20, 1997, he was physically attacked, assaulted and brutally beaten by John Mattull and Jeffery Todd in the parking lot of [the Pub].

4. That [the Pub] breached [its] duty to protect [Bartolini] from other patrons of [the Pub] by serving alcoholic beverages to [Bartolini's] assailants, one of whom was a minor, after they were visibly intoxicated, failing to maintain the peace, failing to provide adequate security, all despite knowledge of the likelihood of the acts of the assailants and otherwise failing to properly protect and assist [Bartolini] and otherwise failing to exercise reasonable care and caution.

5. That as a result of [the Pub's] acts and omissions, [Bartolini] sustained injuries to his head and face and was otherwise injured, was prevented from transacting his business, suffered great pain of body and mind, and incurred expenses for medical attention....

Appellant's Supplemental Appendix at 1–2. Thereafter, Bartolini's personal injury action proceeded to trial. At the conclusion of Bartolini's case-in-chief, the Pub moved for judgment on the evidence. The trial court denied the Pub's motion.

The jury returned a verdict in favor of Bartolini, attributing eighty percent (80%)

---

2. We note that Bartolini did not seek to impose liability under the Dram Shop Act. *See* R. 380

3. The record indicates that Round the Corner Pub is partitioned into two sections, one of which is a restaurant and the other a bar. However, a patron may move freely between the restaurant and the bar, there is no physical obstruction. The restaurant section of Round the Corner Pub is closed to the public at night while the bar section remains open.

4. It appears that the altercation started when Todd broke a beer bottle on the ground and Bartolini said of Todd and Mattull, "Oh, that is bright. They ought to be wearing skirts." R. 340.

5. We note that both Todd and Mattull pled guilty to aggravated battery, a Class D felony.

of the fault of Bartolini's injury to the Pub, ten percent (10%) to Todd, and ten percent (10%) to Mattull. The jury awarded damages to Bartolini in the amount of $350,000.00, of which the Pub was responsible for $280,000.00. On February 20, 2001, the Pub filed a motion to correct errors with the trial court requesting that the trial court award judgment in its favor or order a new trial. The trial court later denied the Pub's motion to correct errors. This appeal ensued.

### Discussion and Decision

### I. Standard of Review

■ A trial court has considerable discretion to grant or deny motions to correct error. *Dughaish ex rel. Dughaish v. Cobb*, 729 N.E.2d 159, 167 (Ind.Ct.App.2000), trans. denied. We will reverse only if the court has abused its discretion. *Id.* An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it, and when the court's decision is without reason or is based upon impermissible reasons or considerations. *Id.*

### II. Elements of Negligence

The Pub first contends that the trial court erred in refusing to grant his motion to correct error because Bartolini failed to establish at trial the duty of care and proximate cause elements of negligence. We disagree.

### A. Duty of Care

The Pub asserts that the trial court erred in denying its motion to correct errors because Bartolini failed to establish at trial the negligence element of duty of care.

■ To establish a claim of negligence, a plaintiff must show: (1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; and (3) that the breach proximately caused the plaintiff's injury. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991). Absent a duty, there can be no breach of duty and no recovery in negligence. *Mishler v. State*, 730 N.E.2d 229, 231 (Ind.Ct.App. 2000). Whether a duty exists is a question of law. *Id.* Bartolini essentially argued at trial that the Pub him owed a common law duty of care. Alternatively, Bartolini argued at trial that the Pub gratuitously assumed a duty of care toward its patrons including to him the night he was attacked.

### 1. Common Law Duty

■ It has long been recognized that a tavern owner, engaged in the sale of intoxicating beverages, has a duty to exercise reasonable care to protect guests and patrons from injury at the hands of irresponsible persons whom they knowingly permit to be in and about the premises. *Ember v. BFD, Inc.*, 490 N.E.2d 764, 769 (Ind.Ct. App.1986). However, the duty to anticipate and to take steps against the criminal act of a third party arises only when the facts of the particular case make it reasonably foreseeable that a criminal act is likely to occur. *Welch v. Railroad Crossing, Inc.*, 488 N.E.2d 383, 388 (Ind.Ct.App. 1986). Facts that make a criminal act reasonably foreseeable include the prior actions of the assailant either on the day of the act or on a previous occasion. *Id.*

■ The Indiana Supreme Court has held that trial courts confronted with the issue of whether a landowner owes a duty to take reasonable care to protect an invitee from the criminal acts of a third party should apply the "totality of the circumstances" test to determine whether the crime in question was foreseeable. *Delta Tau Delta v. Johnson*, 712 N.E.2d 968, 973 (Ind.1999); *see also Vernon v. Kroger Co.*, 712 N.E.2d 976 (Ind.1999); *L.W. v. Western Golf Ass'n*, 712 N.E.2d 983 (Ind.1999).

When considering whether the totality of the circumstances supports the imposition of a duty, we look to "all of the circumstances surrounding an event, including the nature, condition, and location of the land, as well as prior similar incidents, to determine whether a criminal act was foreseeable." *Delta Tau Delta*, 712 N.E.2d at 972. "A substantial factor in the determination of duty is the number, nature, and location of prior similar incidents, but the lack of prior similar incidents will not preclude a claim where the landowner knew or should have known that the criminal act was foreseeable." *Id.* at 973. While landowners have no duty to ensure an invitee's safety, they do have a duty to "take reasonable precautions to prevent foreseeable criminal acts against an invitees." *Id.* (emphasis deleted).

In the present case, Bartolini was attacked in the parking lot that was located directly adjacent to the pub. It is apparent from the record that Bartolini was not on the Pub's premises when he was attacked. Our supreme court has stated that an invitor's duty to exercise reasonable care extends to providing a safe and suitable means of ingress and egress for the invitee. *Vernon*, 712 N.E.2d at 979. Furthermore, we have held that a duty of reasonable care may be extended beyond the business premises when it is reasonable for invitees to believe that the invitor controls premises adjacent to his own or where the invitor knows his invitees customarily use such adjacent premises in connection with the invitation. *Merchants Nat. Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 387 (Ind.Ct.App. 2000). It is reasonable for invitees to believe that the Pub controlled the parking lot adjacent to the drinking establishment. It is logical to assume that the Pub had knowledge that its invitees customarily utilize the parking lot when patronizing the bar. Consequently, we will apply the "to-

tality of the circumstances" test to determine whether the Pub owed Bartolini a common law duty.

In *Merchants*, the victim entered a tavern located in Terre Haute, Indiana. The victim stayed at the tavern until closing, then left with several friends. As the victim left the tavern, he got into an altercation with a patron of the tavern who had exited the drinking establishment several minutes earlier. The altercation culminated with the patron shooting the victim on a sidewalk outside of the tavern. The victim died from his injuries. Consequently, the administrator of the victim's estate filed a wrongful death suit against the tavern. The tavern moved for summary judgment arguing that it owed no duty to the victim as a matter of law. Following a hearing, the trial court granted summary judgment in favor of the tavern. *Id.* at 386.

We affirmed, holding that the tavern did not owe a common law duty to the victim. *Id.* at 388. We explained that:

> There is no evidence of any prior or similar shooting incidents outside of the tavern that would have alerted [the tavern] to the likelihood that [the patron] would shoot [the victim]. The only evidence of prior incidents is testimony by a tavern employee that fights occurred outside the tavern "quite a bit." This evidence is insufficient to demonstrate that [the victim's] shooting death was foreseeable. Additionally, there is nothing in the record to indicate that [the tavern] had any knowledge that [the patron] had the propensity to commit a criminal act, and further, there is no evidence that [the victim] and [the patron] had any contact while inside the tavern on the night in question to indicate hostility between the two. Under the totality of the circumstances presented here, we conclude, as a matter of

law, that [the tavern] did not have a duty to protect [the victim] from the unforeseeable criminal act committed by [the patron].

*Id.* at 387–88.

In the present case, we hold as a matter of law that the evidence fails to establish that the Pub owed Bartolini a common law duty to protect him from the criminal acts committed by Todd and Mattull. There is little evidence of any fights in the Pub or in the adjacent parking lot between the participants in this incident that would have alerted the Pub to the likelihood that the two young men would attack Bartolini. Moreover, there is nothing in the record to indicate that the Pub had knowledge that Todd and Mattull had the propensity to commit criminal battery. The record lacks any evidence that Todd and Mattull had previously caused a disturbance or been engaged in a fight in the bar or at the adjacent parking lot. Although testimony at trial established that Todd and Mattull were visibly intoxicated and boisterous in the drinking establishment on the night of the attack, these facts do not establish a propensity to commit a criminal battery. Moreover, although Todd testified that he exchanged words with Bartolini inside the Pub, we do not know the content of this exchange or if the verbal exchange was hostile, indicating the potential for future physical violence.

It appears that the inebriated assailants attacked Bartolini because of his comments outside the Pub in the early hours of the morning. The attack upon Bartolini was a spontaneous, unforeseeable event. Therefore, applying the "totality of the circumstances" test, we conclude, as a matter of law, that the Pub did not have a common law duty to protect Bartolini from the unforeseeable criminal acts committed by Mattull and Todd. *See, e.g., Fast Eddie's v. Hall,* 688 N.E.2d 1270, 1273 (Ind.

Ct.App.1997), *trans. denied.; Welch,* 488 N.E.2d at 389.

### 2. Assumed Duty

We must now examine whether the Pub assumed a duty of care toward Bartolini. The Indiana Supreme Court has held that a duty may be imposed:

> upon one who by affirmative conduct ... assumes to act, even gratuitously, for another to exercise care and skill in what he has undertaken. It is apparent that the actor must specifically undertake to perform the task he is charged with having performed negligently, for without actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully.

*Butler v. City of Peru,* 733 N.E.2d 912, 917 (Ind.2000) (quoting *Lather v. Berg,* 519 N.E.2d 755, 766 (Ind.Ct.App.1988)). The assumption of a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person. *Delta Tau Delta,* 712 N.E.2d at 975. The existence and extent of such duty is ordinarily a question of fact for the trier of fact. *Id.* Stated differently, we may decide whether the Pub assumed a duty toward Bartolini only if there are no genuine issues of material fact. *Sizemore v. Templeton Oil Co.,* 724 N.E.2d 647, 651 (Ind.Ct.App. 2000).

In *Ember,* the plaintiff filed a negligence suit against the tavern after he was attacked and severely beaten by men outside the tavern. 490 N.E.2d at 768. The plaintiff intended to enter the tavern in order to meet his wife and friends when he was attacked directly outside the drinking establishment. *Id.* The tavern filed a motion for summary judgment with the trial court that was later granted. This court reversed the grant of summary judgment in favor of the tavern, determining that there

were genuine issues of material fact regarding whether the tavern had gratuitously assumed a duty to the plaintiff. *Id.* at 770. We found that the tavern took many affirmative actions indicating an intent to assume a duty toward the plaintiff, such as: (1) distributing flyers throughout the neighborhood asking residents to call the tavern if anyone was disturbing them, even if the disturbance was unrelated to the drinking establishment; (2) informing the neighborhood that the tavern would provide security patrols in the area; and (3) tendering a letter to the Alcoholic Beverage Commission detailing the steps it had taken to preserve the peace and order in the immediate area surrounding the drinking establishment. *Id.*

 Here, the record reveals that the Pub employed one bouncer on the weekends. The bouncer's primary duties included checking the identification of patrons, preventing bottles from being taken into the adjacent parking lot, escorting female employees to their vehicles at closing time, and maintaining security. Louis Gerodemos, the owner of the Pub, testified at trial that the bouncer was to "keep the peace" inside the bar and the adjacent parking lot. Gerodemos testified that the bouncer was given the authority to eject unruly and disruptive patrons from the interior confines of the Pub. Gerodemos further testified that if a patron caused a disruption or altercation in the parking lot, the bouncer was to address the unruly behavior. Gerodemos testified that it was very important to him that he provided a secure and safe environment for his customers.

Deborah Zenci, the head bartender of the Pub, testified that during closing hours the bouncer was stationed at the open doorway of the drinking establishment. Zenci testified that at this post, the bouncer had a complete view of the adjacent parking lot. It is apparent from the record that the bouncer was posted at the door of the Pub during closing hours in order to monitor the exit of the customers, provide crowd control, and facilitate the closure of the bar. The bouncer's presence at the door of the Pub undoubtedly was an effective measure in preventing fights and altercations. We believe that the record establishes that the Pub assumed a duty to protect Bartolini from Todd and Mattull's attack. The record indicates that the Pub through affirmative conduct gratuitously undertook a duty to protect its patrons, including Bartolini, from the unforeseeable criminal attack of a third party. Because we have determined that the Pub owed Bartolini a duty of care, we must now determine whether the Pub's breach of this duty was the proximate cause of Bartolini's injuries.

### B. Proximate Cause

 In determining whether an act is the proximate cause of another's injury, we consider whether the injury was the natural and probable consequence of the negligent act which, in light of the attending circumstances, could have been reasonably foreseen or anticipated. *St. John Town Bd. v. Lambert,* 725 N.E.2d 507, 520 (Ind.Ct.App.2000). To be considered a proximate cause, the negligent act must have set in motion a chain of circumstances which, in natural and continuous sequence, led to the resulting injury. *Id.* However, the willful, malicious, or criminal act of a third party is an intervening act that breaks the causal chain between the alleged negligence and the resulting harm. *Basicker ex rel. Johnson v. Denny's Inc.,* 704 N.E.2d 1077, 1080 (Ind.Ct.App.1999), *trans. denied.* Although proximate cause is generally a question of fact, it becomes a question of law where only a single conclusion can be drawn from the facts. *Id.*

### 1. Failure to Maintain Security in Parking Lot

Bartolini testified at trial that when the two youths exited the Pub, one of them struck a stop sign in the parking lot, knocking it over. The stop sign was mounted in a bucket of cement and was a short distance from the entrance to the Pub. Bartolini further testified that one of the youths then exclaimed, "hey, watch this," and threw a beer bottle up in the air which shattered when it hit the ground. R. 340. Bartolini testified that he then commented to his friends, "oh, that's real bright. They ought to be wearing skirts." *Id.* Bartolini stated that he was thirty feet from the entrance of the Pub when the events of the night unfolded.

Todd testified that he was intoxicated when he entered the Pub, and that he consumed many alcoholic beverages in the drinking establishment. Todd's heavy consumption of alcohol that evening clouded his recollection of the events of September 19, 1997. Todd further testified that he attacked Bartolini as a result of the verbal altercation he had with him in the parking lot of the Pub. Todd testified that he initially confronted Bartolini in the parking lot after Bartolini made the comment, "why don't you hike your skirts up." R. 108.

Peggy Lynn Knoff, a friend of Bartolini, testified at trial that after Todd confronted Bartolini, the exchange between the two escalated to Todd telling Bartolini, "I'm going to kill you mother f* * * *." R. 141. Bartolini testified that Todd informed him, "look buddy, we're going to get you. We're going to kill you, and if it ain't tonight tomorrow, but we're going to kill you." R. 342.

The record reveals that the verbal altercation then escalated into a scuffle, with pushing and shoving on the part of both Bartolini and Todd. During the scuffle, a waitress from the Pub came outside and told Bartolini and Todd to cease fighting or the police would be notified. Zenci, another employee of the Pub, testified at trial that she and the bouncer went outside after the waitress informed her of the confrontation between Bartolini and Todd. Zenci further testified that she and the bouncer observed the verbal altercation between Bartolini and Todd for approximately five minutes. Zenci stated that she and the bouncer stood on the outskirts of the confrontation. According to Zenci, the police were notified only after both the youths attacked Bartolini.

It is apparent from the record that the bouncer of the Pub was not stationed at the door of the bar during closing time and failed to monitor the parking lot on this particular night. Otherwise, the bouncer would have seen the stop sign being knocked over, the beer bottle broken, and the initial stage of the verbal altercation between Bartolini and Todd. The events unfolded near the entrance of the Pub and were clear indicators of an impeding physical confrontation or disturbance warranting intervention by the police. Even after being notified of the verbal altercation, a bartender and the bouncer of the Pub remained on the outskirts and merely observed for several minutes the increasingly heated exchange between Bartolini and Todd. The police were never called during the verbal banter between Bartolini and Todd. We believe that the record supports the conclusion that the Pub's breach of its assumed duty to maintain security for its patrons in the parking lot was the proximate cause of Bartolini's injuries. Essentially, the Pub failed to "keep the peace" in the parking lot and maintain a secure environment for its patrons. Therefore, Bartolini satisfied the proximate cause element of negligence.

### 2. Violation of Liquor Laws

For the sake of clarity, we will address Bartolini's argument at trial that the Pub's violation of Indiana Code sections 7.1–5–7–8(a) and 7.1–5–7–10(b) also constituted a proximate cause of his injuries.[6]

The unexcused or unjustified violation of a duty proscribed by a statute or ordinance constitutes negligence per se if the statute or ordinance is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation. *Town of Montezuma v. Downs,* 685 N.E.2d 108, 112 (Ind.Ct.App.1997), *trans. denied.* In order for the violation of a statute or ordinance to be held as negligence per se, the trier of fact must determine whether the statute is applicable. *Dawson by Dawson v. Long,* 546 N.E.2d 1265, 1268 (Ind.Ct. App.1989), *trans. denied.* Furthermore, the trier of fact must determine whether the violation of the statute occurred and, if so, whether the violation proximately caused the injury.

We discern from the record that Bartolini's theory is that the Pub's violation of two Indiana statutes constitutes negligence per se and were a proximate cause of Bartolini's injuries. The statutes Bartolini argues the Pub violated are as follows:

Indiana Code section 7.1–5–7–8(a), which provides that it is a Class C misdemeanor for a person to recklessly sell, barter, exchange, provide, or furnish an alcoholic beverage to a minor; and Indiana Code section 7.1–5–7–10(b), which provides that it is a Class C misdemeanor for a permittee to recklessly permit a minor to be in the prohibited place beyond a reasonable time in which an ordinary prudent person can check identification to confirm the age of a patron. These statutes impose a duty on establishments that serve alcoholic beverages to promptly check the identification of patrons and serve only those individuals who are above the legal age of twenty-one years. These two statutory provisions were implemented by our legislature to protect the general health, welfare, and safety of this state's citizenry by controlling the sale and distribution of alcoholic beverages and prohibiting the prolonged presence of the underage in such establishments.

It is apparent from the record that on the night of September 19, 1997, Todd, who was underage, entered the Pub and was served alcoholic beverages by personnel of the bar. Todd consumed many alcoholic beverages at the Pub with his friend Mattull, who was twenty-one years old. Although Todd remained at the Pub for

---

**6.** We note that after the Pub moved for judgment on the evidence, Bartolini informed the trial court that:

> We're not going to mention any statute. We're not going to allege any statutory violation. We're not going to allege that because he violated the Indiana Liquor Commission laws that he did, that he should be held responsible. What we're going to be alleging is that they created a dangerous environment, and that this was a foreseeable and preventable incident. Just the standard tort allegations.

R. 401. Bartolini failed to articulate his theories of recovery and there is confusion on what theories Bartolini was proceeding under

at trial. We have painstakingly attempted to discern from the record all of Bartolini's theories of recovery. While these statutory provisions were not specifically referenced, Bartolini argued at trial that the Pub was negligent in not only failing to check Todd's identification, but also by allowing him to remain on the premises in a visibly intoxicated state. Therefore, we have gleaned from the record that Bartolini's theories at trial included the concept that the violation of these two statutory provisions constituted negligence per se, and were a proximate cause of Bartolini's injuries. Bartolini essentially argued, without objection from the Pub, theories which were not contained in his complaint.

several hours, personnel of the Pub never checked his identification even though the bar had a policy that required each patron to have two forms of identification. Moreover, there was evidence presented at trial that the Pub failed regularly to check patrons' identification and was known to serve persons underage with alcoholic beverages. Thus, it is clear that on September 19, 1997, the Pub violated sections 7.1-5-7-8(a) and 7.1-5-7-10(b) constituting negligence per se. However, our inquiry does not end here. The question remains whether the Pub's violation of these two statutory provisions was a proximate cause of Bartolini's injuries.

■ Although the Pub breached its statutory duty under sections 7.1-5-7-8(a) and 7.1-5-7-10(b), any such breach was not a proximate cause of the resulting harm. Todd's criminal act of striking Bartolini was an intervening criminal act that broke the causal chain between the Pub's negligence and Bartolini's injuries. Therefore, as matter of law, we hold that the Pub's negligence per se did not constitute a proximate cause of Bartolini's injuries.

In sum, we find that the Pub assumed a duty to its patrons to protect them from attacks in the parking lot of the bar. In addition, we find that the Pub's failure to "keep the peace" in the parking lot was a proximate cause of Bartolini's injuries. Thus, the Pub was not entitled to judgment as a matter of law on the basis that Bartolini failed to satisfy all of the elements of negligence.

### III. Closing Argument

The Pub also contends that the trial court erred in refusing to grant its motion to correct errors because a portion of Bartolini's closing argument was improper and highly prejudicial. We find that this issue has been waived for our review.

The Pub argues that a portion of Bartolini's closing argument asked the jury to base their verdict on the consideration of an improper element and that the statements were highly prejudicial. Essentially, the Pub argues that Bartolini asked the jury to become social activists and award a sizeable verdict in his favor in order to effect a change in the community at large. Bartolini argues that the Pub waived this issue for our review.

Bartolini's closing argument provides in pertinent part that:

Now, not every case that is tried to a Court and Jury is important—it is important, I think every case for the most part, and it sets a precedent for future cases. You know that. And some cases have little or no moral value. I'm sure you recall the McDonald's case serving—suing over serving hot coffee. But this case here today has great legal, moral, social significance, and you have an opportunity here to accomplish two things by your verdict today. First of all, your verdict can indemnify [Bartolini] all the hell he's been through, and the problems he will continue to have over the incident in the years ahead. That's important of course. But your verdict can also do something else. It can send a message out, loud and clear, to every drinking establishment in our community by implicitly telling them it's their legal, it's their moral, it's their social responsibility to check I.D.'s at the door. Now, it won't always stop an intentional criminal act by an unruly patron. Some kids will slip through the cracks anyway. They've got pretty authentic looking I.D.'s. But it will go a long way towards stopping it, and it is beyond all doubt that it would have stopped it in this case. And so, at this moment, you are the conscience of our community. You can send a message to the restaurants and taverns. It isn't as

though we're numbers or robots. We are people. We matter. And you could tell them, "you're not going to get away with this." You have a chance to right a serious wrong here. Well it's going to take some courage, but you've got that. You're people of strength and morality and conscience. Don't let this opportunity pass you by.

R. 508–09.

▮▮▮▮▮ The record reveals that the Pub did not object at trial to the portion of Bartolini's argument now claimed to be improper by the drinking establishment. Indiana law is clear that to preserve statements of trial counsel for appellate review, the opposing party must promptly interpose and state its objection to the language or argument and request the court to instruct the jury to counteract any harmful effect of such language or argument, and if the motion is granted and such instructions are not sufficient to cure the error, follow such action by a motion to have the submission set aside. *Ritter v. Stanton*, 745 N.E.2d 828, 856 (Ind.Ct.App. 2001), *trans denied* (citing *Dayton Walther Corp. v. Caldwell*, 273 Ind. 191, 402 N.E.2d 1252, 1257 (1980)). The Indiana Supreme Court long ago stated that "[w]e cannot permit litigants to gamble on the possibility of a favorable verdict, and, after an adverse verdict has been returned, set it aside on appeal when the losing parties failed to move that the submission be set aside when the alleged error occurred." *Gamble v. Lewis*, 227 Ind. 455, 85 N.E.2d 629, 635 (1949). Thus, we agree with Bartolini that this issue has been waived for our review.

## IV. Verdict

The Pub also contends that the trial court erred in refusing to grant its motion to correct errors because the jury verdict was excessive, warranting imposition of a new trial. We agree.

▮▮▮▮ The jury awarded Bartolini $350,000.00 in damages, allocating eighty percent (80%) of the fault to the Pub, ten percent (10%) to Todd, and ten percent (10%) to Mattull. Traditionally, the jury is afforded a great deal of discretion in assessing damage awards. *Groves v. First Nat. Bank of Valparaiso*, 518 N.E.2d 819, 831 (Ind.Ct.App.1988), *trans. denied*. "Physical and mental pain are, by their very nature, not readily susceptible to quantification, and, therefore, the jury is given very wide latitude in determining these kinds of damages." *Id.* This discretion is not limitless, however. "Where the damage award is so outrageous as to indicate the jury was motivated by passion, prejudice, partiality, or consideration of improper evidence, we will find the award excessive." *Id.* When the evidence concerning the injury and damages is conflicting, the jury is in the best position to assess the damages and the jury's verdict "cannot be said to be based upon prejudice, passion, partiality or corruption or on the consideration of some improper element." *Faulk v. Chandler*, 408 N.E.2d 584, 586 (Ind.Ct.App.1980).

▮▮▮▮ We find that the jury's allocation of fault is contrary to and not supported by the evidence. Although the Pub failed to maintain security in the parking lot, Todd and Mattull inflicted the physical injuries on Bartolini. Their actions were spontaneous, unforeseeable, and independent criminal acts. Attributing eighty percent (80%) of a $350,000.00 damage award to the Pub for failing to maintain security in the parking lot is against the weight of the evidence and indicates that the jury was motivated by prejudice and improper considerations. We infer from the record that the jury was attempting to punish the Pub for frequently serving alcoholic bever-

ages to minors. Consequently, we reverse and remand for a new trial.

### Conclusion

Based on the forgoing, we hold that the trial court properly denied the Pub's motion for judgment on the evidence because Bartolini established the duty of care and proximate cause elements of negligence. However, we hold that the jury's allocation of eighty percent (80%) fault to the Pub is contrary to and against the weight of the evidence. Consequently, we reverse and remand for a new trial.

Reversed and remanded.

KIRSCH, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, J., concurring with separate opinion.

Under the facts of this case, I agree that the Pub assumed a duty of reasonable care to protect its patrons with respect to the adjacent parking lot. Bartolini was such a patron.

However, I disagree that *Ember v. B.F.D., Inc.,* 490 N.E.2d 764 (Ind.Ct.App. 1986) cited by the majority supports this conclusion. Ember had not yet become a patron "and was not even en route to the entrance. He had digressed from any intended entry into the premises...." 490 N.E.2d 764 (Sullivan, J., dissenting). The majority seems to conclude that a person intending to become a patron is cloaked with the same protection as a person who is or, immediately prior to the incident, had been a patron. I do not believe an assumed duty extends so far.

Furthermore, I do not believe that in *Ember,* generalized representations to members of the neighborhood, in order to obtain the alcoholic beverage license and

to create general good will, constituted an assumption of a particular duty of protective care to the plaintiff or to the general public. Accordingly, I do not find *Ember* to be of any assistance in this case.

In all other respects I fully concur.