**FAST EDDIE'S d/b/a/ Hyway Tavern, Inc., Appellant–Defendant,**

v.

**Judy HALL, as Administrator of the Estate of Teresa Hall, Appellee–Plaintiff.**

No. 84A01–9701–CV–40.

Court of Appeals of Indiana.

July 28, 1997.

Rehearing Denied Dec. 3, 1997.

James D. Witchger, Rocap Witchger & Threlkeld, Indianapolis, Gerald McGlone, Terre Haute, for Appellant–Defendant.

C. Joseph Anderson, John P. Nichols, Anderson & Nichols, Terre Haute, for Appellee–Plaintiff.

## OPINION

BAKER, Judge.

Appellant-defendant Fast Eddie's d/b/a Hyway Tavern, Inc., (Fast Eddie's) appeals the trial court's denial of its motions for summary judgment on a complaint filed by the plaintiff-appellee Judy Hall, as executor of the estate of Teresa Hall (Estate). Teresa Hall died after one of Fast Eddie's patrons shot and killed her. On appeal, Fast Eddie's argues that it did not owe Hall a common law duty to protect her from another patron's unexpected criminal acts of sexual assault and murder. Additionally, Fast Eddie's argues that its actions were not the proximate cause of Hall's death.

*FACTS*

The facts most favorable to Hall, the non-movant, reveal that on the evening of June 4, 1993, Teresa Hall, Michael Lamb and John Schooley were patrons at Fast Eddie's. Schooley and Lamb arrived together around 7:00 p.m. and began to consume alcoholic beverages. Sometime later in the evening, Hall arrived at the tavern and began to drink and socialize with Schooley. At one point in the evening, after Schooley stepped outside the bar for moment, Lamb began to make advances toward Hall. Record at 737. At about the same time, the on-duty manager, Rita Stephens, noticed that Hall had become heavily intoxicated and was having difficulty sitting up on her bar stool. R. at 747–48. As a result, Stephens asked Lamb to take Hall out of the tavern. Lamb did as Stephens requested and escorted Hall to Schooley's car and returned to the bar. Schooley then drove Hall to his trailer in Terre Haute. After they arrived, Hall passed out in the passenger's seat of Schooley's car. Schooley then went inside his trailer and passed out on the couch.

Shortly thereafter, Lamb purchased a six-pack of beer from the tavern and drove to his home. After discovering that his wife was not there, he drove to Schooley's trailer. As he approached the trailer, he noticed Hall passed out in the passenger's seat of Schooley's car. Lamb removed Hall's body and placed her in his car. He then drove to the Riley Conservation Club where he shot Hall in the abdomen and head, killing her. When Hall's body was found, her blood alcohol was .23%, her skirt was twisted over her hips and her breasts were partially exposed. Supplemental Record at 4. Lamb later confessed to killing Hall and pled guilty to her murder. R. at 119–183.

On September 30, 1994, Judy Hall, as administrator of the Estate of Teresa Hall, filed a complaint against Fast Eddie's alleging that it was negligent per se for violating IND.CODE § 7.1–5–10–15, Indiana's Dram Shop Act, by serving Lamb and Hall alcoholic beverages when they were visibly intoxi-

cated. The Estate further argued that Fast Eddie's breached its common law duty of care to provide for Hall's safety by failing to protect her from Lamb's criminal acts of sexual assault and murder.

In response, Fast Eddie's filed a motion for summary judgment in which it argued that it did not violate the Dram Shop Act because it did not serve Lamb or Hall any alcohol on the night of Hall's murder. It further argued that even if Lamb was served, he was not visibly intoxicated. Additionally, Fast Eddie's argued that it did not owe Hall a common law duty to protect her from Lamb's unforeseeable criminal acts of sexual assault and murder because they were not reasonably foreseeable. The trial court, however, denied the motion.

Thereafter, on May 30, 1996, Fast Eddie's filed a second motion for summary judgment in which it argued that its alleged act of serving Lamb and Hall in violation of the Dram Shop Act was not the proximate cause of Hall's death. Specifically, it argued that sexual assault and murder were not the natural and probable consequences of Lamb's alleged intoxication. The trial court, again, denied Fast Eddie's motion. Thereafter, the trial court certified both of Fast Eddie's motions for summary judgment for interlocutory appeal pursuant to Ind. Appellate Rule 4(B)(6) and this court accepted jurisdiction on February 7, 1997.

## DISCUSSION AND DECISION

Fast Eddie's contends that the trial court erroneously denied its motions for summary judgment. Specifically, it argues that it did not have a common law duty to protect Hall from Lamb's unforeseeable criminal acts of sexual assault and murder. Alternatively, it argues that it did not gratuitously assume a common law duty to protect Hall from Lamb by asking Lamb to remove Hall from the tavern. Finally, Fast Eddie's argues that its alleged violation of Indiana's Dram Shop Act was not the proximate cause of Hall's death.

Initially, we note our standard of review. In reviewing the denial of a motion for sum-

mary judgment, this court applies the same standard as the trial court. *Ooms v. USX Corp.,* 661 N.E.2d 1250, 1252 (Ind.Ct.App. 1996), *trans. denied.* Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). Once the movant has sustained this burden, the non-moving party must respond by setting forth affidavits, depositions, interrogatories and other evidence which show that a genuine issue exists for trial. *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind.1992). Although summary judgment is generally inappropriate in a negligence case, it may be appropriate if the defendant demonstrates that the undisputed facts negate at least one element of the plaintiff's claim. *Barsz v. Max Shapiro, Inc.,* 600 N.E.2d 151, 152 (Ind.Ct.App.1992); *Goldsberry v. Grubbs,* 672 N.E.2d 475, 477 (Ind.Ct. App.1996).

### I. Fast Eddie's Common Law Duty

First we address Fast Eddie's contention that it did not owe Hall a common law duty to protect her from Lamb's criminal acts of sexual assault and murder. In order for a plaintiff to prevail on a claim for negligence, she must show that: (1) the defendant owed her a duty to exercise reasonable care; (2) the defendant breached that duty by failing to conform its conduct to the requisite standard of care; and (3) the plaintiff sustained injuries which were the proximate cause of the defendant's breach. *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991). However, absent a duty, there can be no negligence. *Id.* at 998.

 This court has previously held that a proprietor of a tavern owes its patrons a duty to exercise reasonable care to protect them from the foreseeable acts of other patrons. *Welch v. Railroad Crossing, Inc.,* 488 N.E.2d 383, 388 (Ind.Ct.App.1986). However, a proprietor of a tavern is not required to protect its patrons from unexpected criminal acts unless particular facts make it reasonably foreseeable that the criminal act will

occur. *Id.* These include the prior actions of the assailant either on the day the act occurred or on a previous occasion. *Id.* However, a criminal act is not foreseeable merely because a patron was served beyond the point of intoxication. *Id.*

■ Here, Fast Eddie's argues that it did not have knowledge of any particular act on the part of Lamb, either on the day of Hall's assault and murder or on a prior occasion, which placed it on notice that Lamb had the propensity to sexually assault or murder her. In support of its motion for summary judgment, it offered the testimony of several bar patrons, and the bar employees who stated that Lamb's behavior on the night of Hall's murder was not boisterous, abusive or unruly. In addition, it submitted testimony that Lamb never threatened Hall or any other bar patron on the night of the murder or in the past. R. at 369–370, 461–462, 724–25, 844–45, 889–890.

In response, the Estate offered evidence that Fast Eddies was a "run down … kind of dirty" tavern with a reputation for fighting, theft and accidents. R. at 498–99, 503, 754–55, 758. It also submitted evidence that Lamb and Hall consumed large amounts of alcohol on the night of Hall's murder and that Hall became physically helpless due to her intoxicated state. R. at 496, 713, 718, 821–22, 890–91. Additionally, the Estate submitted evidence that Lamb made advances toward Hall shortly before Schooley took her home and that Rona Slater, a waitress at Fast Eddie's, had personal knowledge that Lamb's "sexual drive increased" when he became intoxicated. R. at 88, 94, 737. Finally, the Estate offered evidence that one or more of the bartenders on duty that evening had knowledge that Lamb carried a gun. R. at 88.

Even accepting all of the Estate's evidence as true, none of it demonstrates that Lamb's sexual assault and murder of Hall were foreseeable. First, it does not follow that because Lamb's sexual drive increased when he was intoxicated and that he showed an interest in Hall, he would intentionally harm Hall absent some evidence which would show his propensity for sexual assault or murder. It also does not follow that because Fast Eddie's had a reputation for violence, that every patron, including Lamb, is violent. Further, even if fighting had occurred at the tavern in the past, the Estate offered no evidence that Lamb had been involved in any of the prior altercations. Finally, Hall's death was not foreseeable merely because Lamb carried a gun. *See Welch,* 488 N.E.2d at 389 (absent some threatening behavior on the part of third·party, carrying a pocketknife alone is not sufficient to make intentional assault with knife foreseeable). Therefore, the evidence most favorable to Hall supports Fast Eddie's contention that it had no knowledge of Lamb's propensity to commit sexual assault or murder.[1] As a result, Fast Eddie's had no duty to protect Hall from Lamb's intentional criminal acts. *See L.W. v. Western Golf Ass'n,* 675 N.E.2d 760, 762–63 (Ind.Ct.App. 1997) (foundation could not have reasonably foreseen that male scholarship recipient would rape female recipient in foundation's coed house where recipients were required to live, because it had no knowledge that male recipient had propensity for violence or sexual assault).

## II. Assumption of a Duty

■ Additionally, Fast Eddie's argues that it was entitled to summary judgment because it did not gratuitously assume a duty of care in favor of Hall. A duty of care may be created by gratuitous or voluntary assumption. *Gunter v. Village Pub,* 606 N.E.2d 1310, 1312 (Ind.Ct.App.1993). If a party has assumed a duty of care, it must act in the manner of a reasonably prudent person. *Id.*

---

1. The Estate also contends that it was commonly known that Lamb had previous felony convictions. In particular, the Estate offered the deposition of Kevin Carlson, one of the tavern's patrons, who stated that Lamb had been convicted of gravestone tipping and possibly burglary. However, there is no evidence that Carlson informed any the tavern's employees of his knowledge. As a result, we decline to impute Carlson's knowledge regarding Lamb's prior convictions to Fast Eddie's.

Here, the Estate contends that the manager's act of telling Lamb to take Hall out of the tavern, evidences Fast Eddie's intent to assume a duty to provide for Hall's safety.

In support of its contention, the Estate relies on *Ember v. B.F.D., Inc.*, 490 N.E.2d 764 (Ind.Ct.App.1986). In *Ember*, a bar patron was attacked and severely beaten by three men outside the bar. *Id.* at 768. As a result, the injured patron filed a complaint against the bar alleging negligence on its part. *Id.* In response, the tavern filed a motion for summary judgment which the trial court subsequently granted. *Id.* On appeal, we reversed the trial court's grant of summary judgment, noting that there were genuine issues of material fact regarding whether the bar gratuitously assumed a duty in favor of its patron after he left the tavern's premises. *Id.* at 770. In particular, we noted that the bar took several affirmative actions which revealed an intent to gratuitously assume a duty, including distributing flyers encouraging local residents to call regarding disturbing conduct by bar patrons, writing a letter to the Alcoholic Beverage Commission detailing the steps it had taken to preserve peace and order in the vicinity of the bar and employing security guards outside the bar. *Id.* The Estate contends that the manager's request for Lamb to take Hall out of the tavern created a genuine issue of material fact regarding its intent to gratuitously assume a duty to provide for Hall's safety.

■ Despite the Estate's contentions, we find its reliance on *Ember* unavailing. Here, Fast Eddie's only action was to order Lamb to take Hall out of the tavern. However, this act is not an affirmative step to provide for Hall's safety. Without some affirmative action on the part of a tavern owner or its employees to provide for its patron's safety, we refuse to impute a duty. Were we to do otherwise, we would, in essence, require tavern owners to be the guarantors of each departing patron's safety, which we refuse to do. As a result, the trial court improperly denied summary judgment on this basis.

### III. Proximate Cause Of Hall's Assault and Murder

Finally, Fast Eddie's argues that the trial court erroneously denied its motion for sum-mary judgment because its alleged violation of the Dram Shop Act was not the proximate cause of Hall's sexual assault and death. According to the Dram Shop Act, a provider of alcoholic beverages is not liable in a civil action unless:

(1) the person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished; and,

(2) the intoxication of the person to whom the alcoholic beverage was furnished was a *proximate cause* of the death, injury, or damage alleged in the complaint.

I.C. § 7.1–5–10–15.5(b) (emphasis added). Thus, even though a proprietor may have a statutory duty to refrain from providing alcoholic beverages to intoxicated persons, it will not be liable unless the alleged violation is the proximate cause of a patron's death or injury.

■ Proximate cause is the limitation which courts have placed on the actor's responsibility for the consequences of his act or failure to act. *National R.R. Passenger Corp. v. Everton By Everton*, 655 N.E.2d 360, 365 (Ind.Ct.App.1995), *trans. denied.* A party's act is the proximate cause of an injury if it is the natural and probable consequence of the act and should have been reasonably foreseen and anticipated in light of the circumstances. *Walker v. Jones*, 511 N.E.2d 507, 509 (Ind.Ct.App.1987). However, a willful, malicious criminal act of a third party is an intervening act which breaks the causal chain between the alleged negligence and the resulting harm. *Welch*, 488 N.E.2d 383, 390. Although proximate cause is generally a question of fact, it becomes a question of law where only a single conclusion can be drawn from the facts. *Rogers v. Grunden*, 589 N.E.2d 248, 257 (Ind.Ct.App.1992), *trans. denied.*

■ Here, even assuming Fast Eddie's breached its statutory duty under the Dram Shop Act, its breach was not the proximate

cause of Hall's sexual assault and death. First, the chain of causation in the instant case is extremely tenuous. Although Lamb initially escorted Hall out of the tavern, he returned to the bar after Schooley drove Hall to his trailer. It was later in the evening, however, when Lamb left the tavern, returned home to discover his wife's absence, decided to proceed to Schooley's home, found Hall passed out in Schooley's car and killed her. The tavern could not have reasonably foreseen this series of events which culminated in Hall's unfortunate death. Additionally, even if the chain of causation were stronger, Lamb's intentional criminal acts were the intervening cause of Hall's death which broke the causal chain between Fast Eddie's negligence and Hall's sexual assault and death. Therefore, Fast Eddie's alleged violation of the statute was not the proximate cause of Hall's sexual assault and death.

■ Finally, we reject the Estate's contention that Lamb's intoxication was the proximate cause of Hall's death. In support of its contention, the Estate submitted Lamb's deposition testimony that his intoxication caused him to shoot Hall. R. at 654–55. The Estate concludes that this evidence creates a genuine issue of material fact regarding the proximate cause of Hall's death. We disagree.

Unlike automobile accidents which occur as the result of alcoholic beverage consumption, assault and murder are intentional acts of volition which are the result of an assailant's deliberate design. *Welch*, 488 N.E.2d at 390. Here, Hall died because Lamb deliberately decided to kill her. This criminal intent would have been present whether or not Lamb was intoxicated. Thus, despite Lamb's contention, we find as a matter of law that Hall's death was the result of Lamb's deliberate design and volitional act and not his intoxication. The trial court, therefore, improperly denied Fast Eddie's motion for summary judgment on the issue of proximate cause. As a result, we reverse the trial court's order denying Fast Eddie's motions for summary judgment and instruct the trial

court to enter summary judgment in its favor.

The trial court's denial of summary judgment is reversed.

ROBERTSON and NAJAM, JJ., concur.