David **SCHLOTMAN**, Appellant–Plaintiff,

v.

**TAZA CAFÉ, d/b/a Gyro Joint,**
**Appellee–Defendant.**

No. 49A05–0608–CV–475.

Court of Appeals of Indiana.

June 14, 2007.

Rehearing Denied July 27, 2007.

Timothy Devereux, Hensley Legal Group, Indianapolis, IN, Attorney for Appellant.

Rick D. Meils, John W. Mervilde, Meils Thompson Dietz & Berish, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

David Schlotman was on a sidewalk outside the Taza Café, d/b/a Gyro Joint, eating food he had purchased there, when he was assaulted by unknown persons. He sued Gyro Joint, alleging it had a duty to protect him. The trial court granted summary judgment for Gyro Joint. Schlotman argues on appeal the attack on him was foreseeable and/or Gyro Joint assumed a duty to protect him.

We affirm.

## FACTS AND PROCEDURAL HISTORY[1]

The facts most favorable to Schlotman, the non-moving party, are that at about 11:00 p.m. on September 4, 2004, Schlotman bought food at Gyro Joint on Broad Ripple Avenue in Indianapolis. He stepped outside where the owner of the restaurant, Rageh Hefni, had placed a table. The restaurant has no interior seating. There were no chairs at the table, and Schlotman sat on the table to eat his food.

He was approached by some individuals in a white SUV. They appeared intoxicated and demanded Schlotman's food. Schlotman told Hefni the individuals were harassing him. He asked Hefni to "hook [one of the individuals] up with some food," (Appellant's App. at 62), and Hefni said "I'm not hooking anybody up. Take it outside." (*Id.*). The individuals left, and Schlotman returned to the sidewalk to continue eating. The individuals drove around the block, then returned and hit Schlotman in the face with a whiskey bottle.

1. We heard oral argument May 22, 2007, at Plainfield High School. We thank the school

## DISCUSSION AND DECISION

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchants Nat. Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind.Ct. App.2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.;* Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment in a negligence case, a defendant must demonstrate the undisputed material facts negate at least one element of the plaintiff's claim. *Id.* Once the moving party has met this burden with a *prima facie* showing, the burden shifts to the nonmoving party to establish a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us the trial court erred. *Id.*

### 1. *Admissibility of Hearsay Evidence*

██ This case turns largely on whether the attack on Schlotman was foreseeable, and Schlotman's designated evidence included certain records from CivicNet, a website that describes itself as "the Indianapolis/Marion County interactive portal that provides businesses and citizens with enhanced access to government records." CivicNet, http://www.civicnet.net (last visited May 2, 2007). In its response to Schlotman's request for admissions, Gyro Joint acknowledged certain complaints existed on that website, but denied knowledge of the events or whether the complaints were true.

for its hospitality and we commend counsel for the quality of their advocacy.

Gyro Joint asserts the CivicNet records should be disregarded because they are inadmissible hearsay and no hearsay exceptions apply. Schlotman responds the admissibility question is not "ripe for determination at this point." (Appellant's Reply. Br. at 8.) He is correct.[2]

In *Reeder v. Harper*, 788 N.E.2d 1236, 1240 (Ind.2003), our Supreme Court addressed whether, in the context of summary judgment, there is a distinction between a hearsay affidavit offered as evidence on the one hand versus the facts established by the affidavit on the other. It found there is. It noted the United States Supreme Court has indicated at least some forms of inadmissible evidence can be considered at the summary judgment stage. Specifically, a non-moving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

The *Reeder* Court noted a number of federal courts have found evidence that would be inadmissible at trial may nevertheless raise a material issue of fact on summary judgment if that evidence can be "rendered admissible" at trial. *Id.* It is the substance of the affidavit and not the form that controls; evidence need not be in admissible form but it must be admissible in content. *Id.* Hearsay evidence may be considered on summary judgment if the same evidence would be admissible in another form at trial. *Id.* at 1241. The *Reeder* court found these federal court approaches applicable to Indiana Trial Rule 56. *Id.* The trial court therefore did not

err to the extent it considered the CivicNet records Schlotman designated.

2. *Duty to Protect Arising from Foreseeability*

■ To recover in negligence, a plaintiff must establish: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a failure on the part of the defendant to conform his conduct to the requisite standard of care; and (3) an injury to the plaintiff proximately caused by the breach. *Simrell's*, 741 N.E.2d at 386. Absent a duty, there can be no breach and, therefore, no recovery in negligence. *Id.*

■ A duty to anticipate and to take steps against a criminal act of a third-party arises only when the facts of the particular case make it reasonably foreseeable that a criminal act is likely to occur. *Id.* at 386–87. In *Simrell's*, we addressed the long-recognized duty of a tavern owner, engaged in the sale of intoxicating beverages, to exercise reasonable care to protect guests and patrons from injury at the hands of irresponsible persons they knowingly permit to be in and about the premises.

■ A court confronted with the issue whether a landowner owes a duty to take reasonable care to protect an invitee from the criminal acts of a third party should apply a "totality of the circumstances" test to determine whether the crime was foreseeable. *Id.* at 387. We accordingly look to all the circumstances surrounding an event, including the nature, condition, and location of the land, and prior similar incidents, to determine whether a criminal act

**2.** The CivicNet records were not the only designated evidence of prior criminal activity in the area. Hefni testified to his personal knowledge of at least seven criminal incidents that occurred in the same block during the four years before Schlotman was assaulted. In each incident, Hefni called police.

was foreseeable. *Id.* The number, nature, and location of prior similar incidents is a "substantial factor" in the determination of duty, *id.*, but the lack of prior similar incidents will not preclude a claim where the landowner knew or should have known that the criminal act was foreseeable. *Id.* Landowners have no duty to ensure an invitee's safety, but they do have a duty to take reasonable precautions to prevent foreseeable criminal acts against an invitee. *Id.*[3] A landowner's duty to exercise reasonable care extends to providing a safe and suitable means of ingress and egress[4] for the invitee. *Vernon v. Kroger Co.*, 712 N.E.2d 976, 979 (Ind.1999).

In *Simrell's*, a patron entered Simrell's and stayed until closing time. He left with two friends. Another group of patrons had left the bar several minutes earlier. An altercation erupted involving two patrons, and one shot and killed the other on the sidewalk outside the bar. We determined Simrell's did not owe the decedent, Merchant,[5] a duty to protect him from the other patron's criminal act:

> There is no evidence of any prior or similar shooting incidents outside of the tavern that would have alerted Simrell's to the likelihood that Brewer would shoot Merchant. The only evidence of

prior incidents is testimony by a tavern employee that fights occurred outside the tavern "quite a bit." Supplemental Record at 7. This evidence is insufficient to demonstrate that Merchant's shooting death was foreseeable. Additionally, there is nothing in the record to indicate that Simrell's had any knowledge that Brewer had the propensity to commit a criminal act, and further, there is no evidence that Merchant and Brewer had any contact while inside the tavern on the night in question to indicate hostility between the two. Under the totality of the circumstances presented here, we conclude, as a matter of law, that Simrell's did not have a duty to protect Merchant from the unforeseeable criminal act committed by Brewer.

*Simrell's*, 741 N.E.2d at 387–88.

■ The situation before us is similar. Schlotman points to many reports of fighting in the area, but there is no designated evidence of unprovoked attacks on Gyro Joint patrons such as the one he experienced. Schlotman finds the attack on him foreseeable based on the nature of the area, specifically the number of people who are drinking, and on prior incidents of criminal activity in the area. He notes there are four bars within a block of Gyro

---

**3.** The first step in resolving a premises liability case is to determine the plaintiff's visitor status. The visitor status defines the duty owed from the landowner to the visitor. *Masick v. McColly Realtors, Inc.*, 858 N.E.2d 682, 688 (Ind.Ct.App.2006). Gyro Joint characterizes the facts as "unprecedented events that occurred off-premises and were caused by a non-patron," (Appellee's Br. at 16), and asserts this "is not, strictly speaking, a premises liability case." (*Id.* at 13.) However, it does not dispute that the "totality of the circumstances" test applied in premises liability decisions addressing a landowner's duty to protect against foreseeable criminal activity is appropriate in the case before us. Under a premises liability analysis, it is apparent Schlotman was an invitee. *See, e.g., Vernon v.*

*Kroger Co.*, 712 N.E.2d 976, 979 (Ind.1999) (Vernon was injured while leaving the Kroger store where he had shopped, and as such, was an invitee of Kroger).

**4.** Schlotman asserts, without explanation or citation to authority, that the duty to provide a safe means of ingress and egress "also applies to an outside eating area that a restaurant provides to its customers." (Appellant's Br. at 7.) Because the attack on Schlotman was not foreseeable, we do not address whether there is such a duty.

**5.** In *Simrell's*, Merchant's National Bank was the administrator of the estate of Christopher Merchant.

Joint, and another in the alley behind Gyro Joint. He also asserts that a number of police cars are typically parked on the block.[6] Schlotman offers no authority that explicitly supports his apparent premise that a violent attack is "foreseeable" merely because there are numerous bars in the neighborhood, and we decline to so hold.

Schlotman was attacked at about 11:00 on a Saturday night. Gyro Joint is particularly busy after about ten due to "after-hour drinking." (Appellant's App. at 70.) Hefni testified he saw drunken individuals in the vicinity nightly and there was a lot of drinking in the area. He testified it was not unusual to see fights in the alley. He had on occasion been approached by people asking for help, and he had called police because people were bothering his customers or people had been assaulted. Intoxicated people had broken into Hefni's car, taken items from the restaurant, and damaged the restaurant. Hefni testified to some occasions when he had called police because intoxicated persons were fighting outside the restaurant.

Despite the evidence of criminal activity in the vicinity of Gyro Joint, the attack on Schlotman was less foreseeable than that in *Simrell's*. Simrell's was a bar, and Gyro Joint is a "one-man, carry-out operation with no seating." (Appellee's Br. at 18.) The *Simrell's* incident involved two patrons; Schlotman was attacked by passers-by who had no apparent relationship with the restaurant. There were no similar incidents where a Gyro Joint patron had been assaulted. Gyro Joint is in a high-traffic area with police officers nearby. Schlotman himself apparently did not foresee the attack, because after the assail-

ant left the first time, Schlotman returned to the table and continued eating. Even after Hefni witnessed the brief initial exchange between the assailant and Schlotman, we cannot say it was "reasonably foreseeable" to Hefni that the assailant would leave, drive around the block, and then return to attack Schlotman. As the attack on Schlotman was less foreseeable than the attack in *Simrell's*, the trial court correctly found Gyro Joint had no duty to protect Schlotman.

### 3. *Assumption of Duty*

■■■ Nor did Gyro Joint assume a duty to protect its patrons who dine on the adjacent sidewalk. A duty to exercise care and skill may be imposed on one who, by affirmative conduct, assumes to act, even gratuitously, for another. *Masick v. McColly Realtors, Inc.*, 858 N.E.2d 682, 692 (Ind.Ct.App.2006). The actor must specifically undertake to perform the task he is charged with having performed negligently, for without actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully. *Id.* In other words, the assumption of a duty creates a special relationship between the parties and a corresponding duty to act in a reasonably prudent manner. *Id.* The existence and extent of such duty are ordinarily questions for the trier of fact, but when there is no genuine issue of material fact, assumption of a duty may be determined as a matter of law. *Id.*

■■■ Schlotman asserts, without explanation or citation to authority, that by providing an outdoor area where its customers could eat Gyro Joint "had a duty to

**6.** Schlotman states "The area in which the Gyro Joint is located is so rowdy that multiple police cars park on Broad Ripple Avenue in an attempt to control the crowds and drunken individuals." (Appellant's Br. at 10.) The page of the record to which he directs us does indicate there is a police presence there, but nowhere is there a reference to the area as "rowdy."

protect its customers from foreseeable criminal attacks occurring in that area." (Appellant's Br. at 13.) We decline to hold the placement of a table on the sidewalk outside a carryout restaurant, without more, gives rise to a special relationship between a restaurant owner and his patrons that demonstrates the restaurant owner has undertaken to protect its patrons.

In *Ember v. B.F.D., Inc.*, 490 N.E.2d 764, 769 (Ind.Ct.App.1986), *modified on denial of reh'g* 521 N.E.2d 981 (Ind.Ct. App.1988), *trans. denied*, we determined premises liability of a tavern owner for injuries to patrons does not extend to third persons beyond the boundaries of the tavern's premises. However, we noted a tavern owner could assume a duty to persons beyond the boundaries of a tavern. In *Ember*, a bar patron was beaten by three men outside the bar. We reversed summary judgment for the bar, finding genuine issues of material fact as to whether the bar gratuitously assumed a duty to its patron after he left the premises.

We noted the bar took several affirmative actions that revealed its intent to gratuitously assume a duty. It distributed flyers encouraging local residents to call about disturbing conduct by bar patrons. The flyers expressed the bar's concern if something in the neighborhood was disturbing residents "even if it doesn't pertain to" the bar. *Id.* at 770. "Thus, the Pub contemplated wide dissemination of a broad offer of help to persons in the vicinity of its business." *Id.* The bar had assured neighborhood residents its staff would patrol the parking lots "in the area." *Id.* A security officer from the bar had in fact helped with a neighborhood problem even though it had nothing to do with the

bar and occurred down the street. The bar wrote to the Alcoholic Beverage Commission detailing the steps it had taken to preserve peace and order in the vicinity of the bar, and it employed security guards outside the bar. "Thus, the Pub's representations and conduct do give rise to the reasonable inference that it assumed a duty to patrol the area surrounding its premises and to protect persons (including patrons) within that vicinity from criminal activity." *Id.*

In *Fast Eddie's v. Hall*, 688 N.E.2d 1270, (Ind.Ct.App.1997), *reh'g denied*, *trans. denied* 726 N.E.2d 303 (Ind.1999), Hall was killed by another bar patron after the bar manager told the patron to take Hall out of the bar because Hall was drunk. Hall's estate contended the manager's act evidenced Fast Eddie's intent to assume a duty to provide for Hall's safety. We found no such assumption of duty:

> Here, Fast Eddie's only action was to order [the patron] to take Hall out of the tavern. However, this act is not an affirmative step to provide for Hall's safety. Without some affirmative action on the part of a tavern owner or its employees to provide for its patron's safety, we refuse to impute a duty. Were we to do otherwise, we would, in essence, require tavern owners to be the guarantors of each departing patron's safety, which we refuse to do.

*Id.* at 1274.

The only "affirmative action" Schlotman points to on the part of Gyro Joint was "providing outdoor amenities which encouraged customers to consume the food purchased on the sidewalk directly in front of the Gyro Joint." [7] (Appellant's Br. at 13.) This does not, as demonstrated by our decisions in *Ember* and *Fast Eddie's*,

---

7. These "amenities" apparently amount to the outdoor table, which Schlotman characterizes as Gyro Joint's provision of an "outdoor eat-

ing area for its customers." (Appellant's Br. at 13.) On the day Schlotman was attacked, there were no chairs at the outdoor table, and

support a finding that the mere placement of a table outside a restaurant indicates the restaurant has assumed a duty to protect persons off its premises from any hazard that might arise.

## CONCLUSION

The attack on Schlotman was not reasonably foreseeable under the totality of the circumstances, nor did Gyro Joint assume a duty to protect Schlotman by placing a table on the sidewalk. We accordingly affirm the summary judgment for Gyro Joint.

Affirmed.

NAJAM, J., and MATHIAS, J., concur.

---

Schlotman sat on the table. However, Schlotman testified there had been chairs at the table on prior occasions.