**Thomas WILLIAMS and Sanford Kelsey, Appellants–Plaintiffs,**

v.

**Kelly Eugene THARP and Papa John's U.S.A., Inc., Appellees–Defendants.**

No. 29A02–0707–CV–625.

Court of Appeals of Indiana.

July 11, 2008.

Rehearing Denied Sept. 10, 2008.

Arend J. Abel, Kelley J. Johnson, Cohen & Malad, LLP, Indianapolis, IN, Attorneys for Appellant.

Julia Blackwell Gelinas, John M.T. Chavis, II, Lucy R. Dollens, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Kelly Eugene Tharp.

Eric D. Johnson, Jeffrey D. Hawkins, Kightlinger & Gray, L.L.P., Indianapolis, IN, Attorneys for Papa John's U.S.A., Inc.

## OPINION

MAY, Judge.

Two African–American men, Thomas Williams and Sanford Kelsey, went to a Papa John's restaurant in Westfield to pick up a pizza they had ordered. They paid for the pizza and left for Williams' home. An employee falsely reported one of the men pulled a gun. A number of police officers surrounded their vehicle

when the two returned home with the pizza. Police detained the men, in handcuffs and on their knees, for an hour and a half while they investigated.

Williams and Kelsey sued Papa John's and its employee for defamation, false imprisonment, negligence, and intentional infliction of emotional distress. The trial court granted summary judgment for Papa John's and its employee on the ground the complaint included no defamatory statement; it also found the employee's statement was privileged even if defamatory and the employee did not act intentionally or in an extreme and outrageous manner.[1]

We reverse and remand for trial.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to Williams and Kelsey, as the non-moving parties on summary judgment, are that in February 2005, Kelsey came to Indianapolis for a job interview with a law firm. He stayed with his childhood friend Williams and Williams' family. The two ordered a pizza from Papa John's Westfield and went to pick it up. They paid for the pizza with Williams' credit card and left.

A Papa John's delivery driver, Kelly Tharp, went outside the store and told a passerby "we need to watch that guy because I think he had a gun. He pulled out a gun and he stuck it back in when he thought—when he saw me looking at him." (App. at 187.) The passerby called the police. Tharp went back into the store and told a fellow employee Kelsey had a gun and Tharp had called police. The other employee had seen no gun, and he saw Williams pay for the pizza with a credit card.

Westfield police officer Jeff Frolick arrived, and Tharp told him two black males came into the restaurant and one pulled out a gun. Tharp described Williams and Kelsey's car and gave Officer Frolick the license plate number. Tharp falsely identified himself to Officer Frolick as "Arthur Tharp."

Officer Frolick told Tharp to stay by the police car while he interviewed other employees, but Tharp left and did not return to work at Papa John's. None of the other employees saw a gun. In his investigation at the Papa John's store, Officer Frolick went behind the counter to stand where Tharp said he was standing when he saw Kelsey pull the gun. Officer Frolick determined someone standing in that location could not see a customer's waist and that Tharp, who was shorter than Officer Frolick, could not have seen what he claimed to see.

An unmarked police car was waiting when Williams and Kelsey arrived at Williams' home, and a number of additional police cars soon arrived and surrounded their vehicle. Police ordered the men out of their car at gunpoint, ordered them to their knees, and handcuffed them. Williams and Kelsey were detained for an hour and a half while their family members and neighbors watched and police investigated. The police searched Williams and Kelsey and found no gun.

Tharp had worked for Papa John's at other locations twice before this incident. The first time he was terminated for theft. The second time he was hired using a fraudulent name. That job ended when he was incarcerated. When hired at the Westfield Papa John's he used his father's

1. We heard oral argument April 8, 2008, at the Indiana University School of Law—Indianapolis. We thank the School for its hospitality and commend counsel for the quality of their advocacy.

name, social security number, and driver's license number.

## DISCUSSION AND DECISION

The standard for reviewing a summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Row v. Holt,* 864 N.E.2d 1011, 1013 (Ind.2007). All inferences are to be drawn in favor of the non-moving parties, here Williams and Kelsey. *Id.*

1. *Adequacy of Allegation of Defamatory Statement*

■ The trial court granted summary judgment, apparently on the sole ground Williams and Kelsey did not adequately allege a defamatory statement.[2] Their allegation of a defamatory statement was adequate.

> [E]ven under notice pleading, a plaintiff must still set out the operative facts of the claim. Indeed, hornbook law stresses the necessity of including the alleged defamatory statement in the complaint. There is sound reason for this policy, as the absence of a statement in the complaint works a detriment on both the court and the defendant. The court is handicapped without the statement since, without it, the court cannot actually determine if the statement is legally defamatory. The defendant is placed on an unfair footing since the absence of the statement denies her the opportunity to prepare appropriate defenses.

*Trail v. Boys and Girls Clubs of N.W. Ind.,* 845 N.E.2d 130, 136–37 (Ind.2006) (citations omitted).

The trial court noted a statement in the complaint that Tharp "falsely reported [Williams and Kelsey] brandished a gun and took money from the cash register," but found it "undisputed that this statement was not made by Tharp or any employee of Papa John's." (App. at 136.) It accordingly found summary judgment for Tharp and Papa John's should be granted under Count I, defamation *per se.*

But immediately after stating that conclusion, the court appeared to reach an opposite conclusion. It noted "pulling a gun without any further activity does not subject one to criminal liability," but a defamatory statement need not "fully describe the crime, only leave the impression of criminal acts in one's mind." (*Id.*) It then said the statement Williams and Kelsey had pulled a gun "leaves the impression in one's mind that the Plaintiffs were committing the criminal activity of armed robbery." (*Id.*)

We agree. The allegation that Tharp falsely reported Williams and Kelsey "brandished" a gun was sufficiently specific to satisfy the notice pleading requirements and any special rules for defamation cases, and their complaint was not rendered insufficient because it incorrectly alleged Tharp said they took money.

■ Pleadings may be amended at any time to conform to the evidence presented at trial, and the purpose of that rule is to "promote relief for a party based upon the evidence actually forthcoming at trial, notwithstanding the initial direction set by the pleadings." *Ayr–Way Stores, Inc. v. Chitwood,* 261 Ind. 86, 90, 300 N.E.2d 335, 338 (1973). If Papa John's felt it was unable to defend itself because the allegations

---

**2.** After granting summary judgment on that ground, the court stated it "will address the additional arguments of the parties under [the defamation count]." (App. at 136.) To provide guidance to the trial court on remand, we will also address those arguments.

were incorrect or not sufficiently specific, it could have moved to dismiss or for a more definite statement, and Williams and Kelsey could have amended the pleadings. Instead, the trial court granted summary judgment, depriving them of their opportunity to amend.

■ An allegedly defamatory communication "is to be viewed in context and given its plain and natural meaning, according to the idea it is calculated to convey and the persons to whom it is addressed." *Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind.Ct. App.1999), *trans. denied* 735 N.E.2d 224 (Ind.2000). The allegation Tharp reported Williams and Kelsey "pulled a gun" presented factual issues for trial because, as the trial court correctly noted, it imputed criminal activity to Williams and Kelsey. Summary judgment based on the inadequacy of the allegation in Williams and Kelsey's complaint was therefore improper.

### 2. *Abuse of Qualified Privilege*

■ The trial court appears to have determined that even if Tharp's statement was defamatory, it was privileged.[3] To the extent the summary judgment was premised on a privilege, it was improper, as there is a genuine issue of fact as to whether the privilege applied to Tharp's statement.[4]

■ A qualified privilege protects "communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Holcomb v. Walter's Dimmick Petroleum, Inc.*, 858 N.E.2d 103, 106 (Ind.2006) (quoting *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992)). To promote society's interest in having crimes reported, communications to law enforcement are protected by this qualified privilege. *Id.*

■ Nevertheless, such a communication can lose its privileged status if the privilege is abused. *Id.* Abuse of the privilege is proven by showing (1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth. *Id.*

As the phrase "qualified or conditional privilege" suggests, such privilege does not change the actionable quality of the words published, but merely rebuts the inference of malice that is imputed in the absence of privilege. In an appropriate case, a trier of fact may determine the privilege was abused by excessive publication, by use of the occasion for an improper purpose, or by lack of

---

**3.** The court first found there was no defamation because Tharp's allegedly defamatory statement was not included in the complaint. But it then stated the allegation Williams and Kelsey pulled a gun while inside the Papa John's restaurant "leaves the impression in one's mind that [Williams and Kelsey] were committing the criminal activity of armed robbery.... However, even if there is a defamatory statement there is no liability if the statement is covered by a privilege." (App. at 136–37) (citation omitted). It then granted summary judgment "independent of the find-

ings above" (presumably, that there was no defamatory statement). (*Id.* at 138.)

**4.** The trial court also granted summary judgment on Williams and Kelsey's negligence count on the ground Tharp's statements were protected by the qualified privilege.

After briefing was completed Williams and Kelsey submitted additional authority on the privilege issue. Tharp moved for leave to respond. We accept Williams and Kelsey's additional authority and Tharp's response.

belief or grounds for belief in the truth of what is said. And although the term "malice" is frequently applied in viewing such acts, it appears "the essence of the concept is not the speaker's spite but his abuse of the privileged occasion by going beyond the scope of the purposes for which privilege exists."

*Id.* at 106–07 (quoting *Elliott v. Roach,* 409 N.E.2d 661, 673 (Ind.Ct.App.1980)).

■ Making statements "without belief or grounds for belief" has been equated to reckless disregard for the truth or falsity of a statement. *May v. Frauhiger,* 716 N.E.2d 591, 595 (Ind.Ct.App.1999). Once a defendant proves a qualified privilege exists for his statements, the plaintiff has the burden of proving that the privilege has been abused. *Id.* If the plaintiff raises sufficient evidence of abuse of privilege, and if different inferences and conclusions reasonably may be drawn from the evidence, then the question of abuse of privilege should be submitted to the jury. *Id.*

In *Holcomb,* a gas station attendant told police a customer operating a green Jeep with license plate number 680670L had driven off without paying for his gasoline. Holcomb, who owned a green Jeep with that license plate number, was arrested and charged with the reported gasoline theft. Holcomb claimed the attendant abused the privilege because her statement to the police was made without belief or grounds for belief in its truth. Our Supreme Court found the privilege was not abused because the attendant did nothing more than detail her version of the facts to a policeman and ask for his assistance, leaving it to the officer to determine the appropriate response:

A person who does no more than this does not abuse the privilege. . . . [S]uch behavior does not go beyond the scope of the purposes for which privilege exists, one of those purposes being en-

hanced public safety by facilitating the investigation of suspected criminal activity. To hold otherwise would make persons who suspect criminal activity reluctant to provide specific (or even speculative) information to law enforcement because of the risk of exposing themselves to civil liability.

*Id.* at 108 (citations and footnote omitted). Holcomb presented no evidence the clerk made the statement "without belief or grounds for belief" it was true; all he offered was that he was wrongly identified. *Id.*

In the case before us, by contrast, Williams and Kelsey offered ample evidence that gives rise to a genuine issue of fact as to whether Tharp acted with reckless disregard for the truth or was honestly mistaken. Officer Frolick testified he stood where Tharp said he was standing when he saw Kelsey pull a gun from his waistband. From that location, the officer testified, he could not see a customer's waist. Officer Frolick noted Tharp "was considerably shorter than I am, so he could not have seen what he told me he saw." (App. at 196.) No other Papa John's employee, including the clerk who assisted Williams and Kelsey, saw either pull out a gun. Tharp gave police a false name and had a record of crimes of dishonesty. He gave two different descriptions of the gun. These facts preclude summary judgment because they give rise to a genuine issue of fact as to whether Tharp made his accusations without belief or grounds for belief in their truth.

### 3. *False Imprisonment*

■ An action for false imprisonment may arise when one knowingly gives false information to a law enforcement officer and that false information leads to another person's arrest. *Allen v. Bethlehem Steel Corp.* 76 Md.App. 642, 547 A.2d

1105, 1109 (1988), *cert. denied sub nom. Green and Vernon Green Assocs. v. Allen,* 314 Md. 458, 550 A.2d 1168 (1988).[5] But a person is not liable for false imprisonment when in good faith he provides information, however mistaken, to law enforcement officers. *Id. And see Holcomb,* 858 N.E.2d at 107 (if one directs the attention of an officer to what he supposes to be a breach of the peace, and does nothing more than communicate the facts to the officer, he is not liable for false imprisonment even though the arrest was unlawful).

■■■■ Summary judgment for Papa John's and Tharp on the false imprisonment count was improperly premised on the qualified privilege. In *Wehrman v. Liberty Petroleum Co.,* 382 S.W.2d 56, 61 (Mo.Ct.App.1964), the court discussed a situation similar to the one before us, where a citizen-informant reports a crime but misstates or omits some information. "[I]n order to make a submissible case for false arrest it must appear that the defendant caused or procured the arrest of the plaintiff." *Id.* But giving erroneous information to the police, even though it results in an arrest, cannot be the basis of an action for false arrest and imprisonment if the informant believed, when he reported the matter to the police, the information given was correct. "[A] different rule should prevail where the informant knowingly and deliberately gives the police an incomplete and biased version of the occurrence which induces them to believe that another is a thief, and results in the latter's unwarranted arrest." *Id.*

Wehrman bought gasoline from Liberty that had water in it. He had engine trouble and had the car serviced. He returned

to the Liberty station and complained to the manager, Brown, that the gasoline he had purchased there contained water. Brown said he knew it had, because he had found water in his own gasoline taken out of the same tank. Wehrman told Brown about the expense for the service to his car and Brown said he would have the company mail Wehrman a check.

Wehrman heard nothing from the company and went back to the station to talk to Brown. While waiting to talk to Brown, he had an attendant put a small amount of gasoline and oil into his car. After an argument with Brown, Wehrman was told he would never get paid, and Brown demanded payment for the gas that had been put in Wehrman's car. Wehrman told Brown he could deduct the amount from what the company owed Wehrman.

Brown called the police when Wehrman drove away. All Brown told police was that a man came in to the station, made a purchase, refused to pay for it, and drove off. He gave police information about the car and its license plate number. Police arrested Wehrman at his home and took him the police station for booking. At the police station, Brown finally paid Wehrman, and Wehrman was released.

Those facts were sufficient for Wehrman's false imprisonment claim to go to the jury:

> Had Brown fully reported to the police *all* of the facts known to him we would have no hesitancy in holding that any arrest which followed could not be said to have been instigated by him. But Brown's own testimony, as well as that of plaintiff, shows that the information which Brown gave to the police was

**5.** Williams and Kelsey offer no authority to the effect this is the rule in Indiana. However, as discussed below, our Supreme Court appears to have recognized this rule, at least implicitly, by addressing at length a "privilege" exception to it in *Holcomb v. Walter's Dimmick Petroleum, Inc.,* 858 N.E.2d 103, 107 (Ind.2006).

incomplete, inaccurate, and highly misleading. . . . The jury could find that by knowingly giving the police such incomplete, biased and misleading information Brown instigated plaintiff's arrest, and the court, therefore, did not err in overruling defendants' motions for a directed verdict.

*Id.* at 61–62 (emphasis in original). As explained above, there is ample evidence to give rise to a genuine issue as to whether Tharp gave the police "incomplete, biased and misleading information" that instigated Williams and Kelsey's arrest. Summary judgment on the false imprisonment count was therefore error.

### 4. *Intentional Infliction of Emotional Distress ("IIED")* [6]

▆▆▆ "The definition of the tort of [IIED] is that 'one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. . . .' " *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind.1991) (quoting Restatement (Second) of Torts § 46 (1965)). The intent to harm one emotionally is the basis for IIED. *Id.* Intent is a question of fact, and summary judgment can be reversed where intent is an element. *See Cummins v. McIntosh*, 845 N.E.2d 1097, 1108 (Ind.Ct.App.2006) (summary disposition improper when there were factual issues regarding whether the parties to a

release intended to release other tortfeasors), *trans. denied* 860 N.E.2d 594 (Ind. 2006). Because there was a genuine issue of fact as to Tharp's intent, summary judgment for Papa John's and Tharp was error.

▆▆▆ "Extreme and outrageous conduct in this context is conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Bradley v. Hall*, 720 N.E.2d 747, 753 (Ind.Ct.App.1999) (quoting Restatement (Second) of Torts § 46). In the appropriate case, the issue may be decided as a matter of law. *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 970 (Ind.Ct.App.2001).

Tharp reported Kelsey pulled a gun, but pulling a gun, without more, is not a crime. He did not say Kelsey pointed the gun or asked for money. Tharp offers decisions he characterizes as addressing more egregious conduct that did not met that standard. *E.g., id.* (accusations of substance abuse, shoplifting, and dishonesty in a "gruff and intimidating manner" in the context of a detainment for the purpose of determining the extent of Dietz's unauthorized conduct was not "outrageous" even if Dietz was "unreasonably detained and de-

---

**6.** Tharp argues Williams and Kelsey cannot bring an IIED claim because their underlying defamation claim fails. He relies on *Rambo v. Cohen*, 587 N.E.2d 140, 146 (Ind.Ct.App. 1992) (plaintiff in a defamation action can recover for emotional and physical harm only on a showing of special damages; emotional and physical harms are not special damages unto themselves, but rather are parasitic damages, viable only when attached to normal (i.e., pecuniary) special damages), *reh'g denied, trans. denied.*

We have expressly disavowed the *Rambo* premise. In *Conwell v. Beatty*, 667 N.E.2d

768, 776 (Ind.Ct.App.1996), *reh'g denied,* defendants argued that to recover for IIED, Conwell had to prove a "host tort." We held "Because [IIED] is now recognized as an independent tort, and is no longer tied to a rule of damages [the "impact rule"], the claim can stand alone. There is no requirement that the plaintiff prove a host tort." *Id. And see City of Anderson v. Weatherford*, 714 N.E.2d 181, 185 (Ind.Ct.App.1999) ("Indiana now recognizes a separate cause of action for [IIED], without the need for an accompanying tort."), *trans. denied* 726 N.E.2d 315 (Ind. 1999).

famed"). However, the conduct did not result in a police action against Dietz.

Our Indiana decisions appear not to have directly addressed whether filing a false police report is "extreme and outrageous" conduct for IIED purposes. In *Weatherford,* we found Weatherford sufficiently stated a claim for IIED based on allegations police officers intentionally retaliated against him and abused their power and process when they violated standard police procedure, disregarded the police chief's instructions, and conspired to intentionally and publicly humiliate Weatherford.

Weatherford had filed misconduct charges against the police based on their behavior when they responded to a complaint about a loud party at his house. On a second occasion when police went to Weatherford's house, he "irritated" the officers by taping their activities and telling his guests they did not need to speak to the police. 714 N.E.2d at 183. He alleged officers later arrested him when normal procedure would have been to issue a summons, and they arrested him at a regional high school basketball game while he was watching his ward compete in the game.

We find instructive decisions from other jurisdictions where allegations a defendant made a false police report were sufficient to survive summary judgment on an IIED claim. In *Gilman v. Gilman,* 46 Conn. Supp. 21, 736 A.2d 199 (1999), Gilman's former wife told police he was smoking marijuana at his home. He was at home having dinner with his girlfriend when police arrived. He claimed as a result of the false and malicious accusation, the police interrupted his dinner and questioned him before declaring the complaint was without basis and leaving.

The court found summary judgment improper. It noted summary judgment is inappropriate for issues involving motive,

intent, and subjective feelings and reactions, *id.* at 200, and found whether the former wife's conduct was extreme or outrageous was an issue for the jury. *Id.* at 201.

In *Adams v. Carlisle,* 278 Ga.App. 777, 630 S.E.2d 529, 542 (2006), *reconsideration denied, cert. denied,* the court reversed summary judgment for the defendant. There, a cashier thought the plaintiff was using counterfeit bills. She told a security guard, who did not investigate but instead called police. The guard falsely told a police officer the plaintiff just walked away after the cashier said she could not accept the bills: "Now that's kind of suspicious. I don't think if I gave somebody 60 bucks in cash I'd just walk out without saying there's a problem." *Id.* at 541.

In fact, after the exchange of the bills, the plaintiff gave the cashier her name and address and did not immediately flee the store, as the security guard suggested. "In our view, a rational and impartial jury could conclude [the guard] relayed misleading or false information to the investigating officer, which constituted reckless conduct of an extreme and outrageous nature and consequently caused [the plaintiff] severe emotional distress." *Id.* at 542.

■ In light of *Gilman* and *Adams,* we decline to hold as a matter of law that the filing of a false report can never amount to extreme or outrageous conduct.

Tharp next argues there is no evidence he intended to harm Williams and Kelsey, as Tharp had never met them and "the record lacks any grounds for ill will." (Tharp Br. at 27.) Williams and Kelsey find an issue of fact in "the obvious racial aspect of this case that a Hamilton County jury could properly consider." (Appellants' Br. at 14.) In a letter Tharp sent Papa John's after the incident, he wrote, "I don't care what that Black guy says—he

was getting ready to rob the store why else put his hand on his gun & start to pull it out." (App. at 199.)

There were genuine issues of fact as to whether Tharp's conduct was extreme and outrageous and whether he acted intentionally or recklessly, and summary judgment on the IIED count was therefore improper.

### 5. Negligent Hiring

 The trial court determined Papa John's was entitled to summary judgment on Williams and Kelsey's negligent hiring count because Tharp committed no tort. Because, as explained above, there was a genuine issue of fact as to whether Tharp committed a variety of torts, summary judgment on that basis was improper.

### 6. Punitive Damages

 Williams and Kelsey sought punitive damages on the ground Tharp's conduct was intentional, extreme, and outrageous and such damages should be awarded to deter Tharp and Papa John's from such conduct in the future. To establish a claim for punitive damages, a plaintiff must show "malice, fraud, gross negligence, or oppressiveness inconsistent with mistake of law or fact, honest error in judgment, overzealousness, mere negligence, or other noniniquitous human failing, together with service to the public interest in such an award...." *Belford v. McHale Cook & Welch,* 648 N.E.2d 1241, 1246 (Ind.Ct.App.1995), *reh'g denied, trans. denied.*

The trial court found Tharp had grounds for his belief in the statement he made, and his conduct was therefore not inconsistent with "mistake of law or fact, honest

error in judgment, overzealousness, mere negligence, or other noniniquitous human failings." (App. at 141.) As such, it appears whether summary judgment was appropriate on this count turns on whether the qualified privilege is available to Tharp. Because we find a genuine issue of fact as to the availability of the qualified privilege, summary judgment on the punitive damages count was improper.

### 7. Evidentiary Rulings

 The trial court struck, apparently as inadmissible hearsay,[7] evidence Williams and Kelsey offered in the form of an in-car video from the police officer that responded to the scene and testimony by Officer Frolick based on his review of a Papa John's surveillance video. As we reverse summary judgment and remand for trial on the ground there was a genuine issue of fact as to whether Tharp's statement was privileged, we need not address the evidentiary rulings.

 However, we note we have recognized a distinction on summary judgment between hearsay offered as evidence and the facts established by the hearsay. *See Schlotman v. Taza Cafe,* 868 N.E.2d 518, 521 (Ind.Ct.App.2007). A non-moving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment. *Id.* In the case of a hearsay affidavit, it is the substance of the affidavit and not the form that controls; evidence need not be in admissible form but it must be admissible in content. *Id.* Hearsay evidence may be considered on summary judgment if the same evidence would be admissible in another form at trial. *Id.*

**7.** Papa John's and Tharp offer an alternative argument the evidence was properly struck because Williams and Kelsey did not lay a proper foundation for the videotape or its transcript. This argument was not raised below and we therefore decline to consider it.

## CONCLUSION

Williams and Kelsey's complaint adequately alleged a defamatory statement and there is a genuine issue of fact as to whether Tharp's statement was protected by a privilege. We accordingly reverse summary judgment for Tharp and Papa John's and remand for trial.

Reversed and remanded.

RILEY, J., and KIRSCH, J., concur.